OPINION
Appellant, Melissa Downing, appeals a decision of the Warren County Court of Common Pleas, Juvenile Division, granting permanent custody of her three minor children to the Warren County Children Services Board ("WCCSB"). We affirm the judgment of the trial court.
Appellant is the mother of three children: Jordan Oliver, born July 27, 1990; Jeffrey Downing, Jr., born September 18, 1995; and Jonathan Downing, born May 3, 1998. Jeffrey Downing, Sr. ("Downing"), appellant's husband, is the father of Jeffrey, Jr., and Jonathan. Jordan's father is unknown.
Jordan has been diagnosed with attention deficit hyperactive disorder and with an adjustment disorder with depressive features. Jordan has only an ambivalent attachment to his mother and Downing. Jordan must see a psychologist weekly for therapy and periodically meets with a psychiatrist for medication reviews. He takes the prescription medications Clonodine and Resperdol to moderate his behavior.
Jordan was removed from appellant's home on December 20, 1997, and has been in foster care since WCCSB gained temporary custody of him in February 1999. Jordan was removed after suffering a spiral fracture to his left arm caused by Downing. Downing stated that the injury occurred accidentally while the two were playing and he fell on Jordan. However, this statement was inconsistent with the type of injury. Jordan stated that the injury occurred when Downing, in anger, twisted his arm behind his back. Downing was convicted of felony child endangering as a result of this incident and served a prison sentence for the crime. Downing was preliminarily diagnosed with intermittent explosive disorder, which causes him to have uncontrollable outbursts of anger. In spite of this, Downing failed to complete batterer's intervention courses which were made a requirement of the case plan.
Jeffrey was removed from appellant's home in June 1998 and was found to be malnourished. The diagnosing physician found that Jeffery weighed two to three pounds less than would have been necessary to classify him as a "failure to thrive" child. This occurred in spite of the fact that appellant had the benefit of six months of early parenting intervention and had only one child to parent, as Jordan had been removed from her home and Jonathan was not yet born. Jonathan was removed from appellant's home shortly after his birth.
Jeffery has been diagnosed with a mild receptive language delay, a moderate expressive language delay, and withdrawn behavior with developmental delays. Jeffrey's development lags thirteen months behind his chronological age. Because of his special needs, Jeffrey requires speech, occupational, and physical therapy. Jonathan has been diagnosed with mild developmental delays and requires physical and occupational therapies, and verbal skills instruction.
On January 22, 1999, Warren County Children Services filed a motion requesting permanent custody of the three children. The motion alleged that:
 the parents have failed continuously and repeatedly to substantially remedy the conditions causing the removal of the children in spite of the diligent efforts of Warren County Children Services; the mental retardation of Melissa Downing is so severe that it makes her unable to provide an adequate permanent home for the children; the parents are unwilling or unable to provide food, clothing, shelter and other basic necessities for the children or to prevent them from suffering physical, emotional, or sexual abuse or physical, emotional or mental neglect; and Jeff Downing, Sr. is incarcerated for an offense committed against Jordan Oliver and poses an on-going danger to Jordan Oliver and his siblings[.]
A hearing on the motion was held before a magistrate. At the hearing, WCCSB caseworker Joseph Atkinson testified that, although appellant was consistent in her visitation with the children, he was forced to "safeguard" the children during the visitation sessions rather than observe the interaction between the parents and children. This was necessary because appellant was unable to apply the skills learned in parenting classes she attended as part of her case plan services. During visitation, appellant would focus all of her attention on Jonathan, providing minimal supervision over the other two children. Appellant herself testified that she would be unable to parent the children without substantial, daily assistance.
A psychological evaluation conducted by Dr. Cynthia Miner, and entered into evidence, indicated that although appellant is a low functioning adult, she is not mentally retarded. In her interview with Dr. Miner, appellant stated that she did not know what special needs Jonathan and Jeffrey had, but that they might be learning disabled. In this interview, appellant also maintained that Downing is innocent of the child endangering charge. Dr. Miner found that appellant has a strong tendency to minimize or deny problems as a means of coping. Dr. Miner concluded that it was likely that appellant would be unable to adequately protect her children from future abuse by Downing because she would support Downing over her children.
The trial court granted the motion for permanent custody, concluding that appellant had failed to substantially remedy those conditions which caused the removal of the children, and that it is in the best interest of the children that WCCSB be granted permanent custody. Appellant appeals, raising the following assignment of error:
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN AFFIRMING THE MAGISTRATE'S DECISION WHEN THE DECISION WAS LEGALLY INSUFFICIENT AS A MATTER OF LAW AS THE STATE FAILED TO PROVE THE ALLEGATION MADE AGAINST MOTHER IN ITS MOTION: TO WIT; THAT THE "* * * MENTAL RETARDATION OF [MOTHER] IS SO SEVERE THAT IT MAKES HER UNABLE TO PROVIDE FOOD, CLOTHING, SHELTER, AND OTHER BASIC NECESSITIES FOR THE CHILDREN * * *" AS PER R.C. 2151.414(E)(2).
Appellant contends that the version of R.C. 2151.414 in effect prior to its amendment by H.B. 484 is the appropriate statutory framework under which the present permanent custody decision should be decided, as it is the version that was in effect at the time that the motion for permanent custody was filed. This is in fact the statutory provision used by the trial court to grant the motion for permanent custody. The trial court stated explicitly, "this Court will consider this [matter] pursuant to that version of Revised Code Section 2151.414 which was in effect immediately preceding [the amended] version[.]"
R.C. 2151.414 as amended by H.B. 484 is a remedial statute that is intended to be applied retroactively. In re Rodgers (2000),138 Ohio App.3d 510, 519; see, also, In re Kerby (Sept. 25, 2000), Butler App. No. 99-09-164, unreported. The amended statute "is intended to apply to a permanent custody case where a neglected or dependent child has been in the temporary custody of children's services for twelve or more consecutive months, counting from a period beginning on or after May 18, 1998." In re Rodgers, 138 Ohio App.3d at 516; In re Morris (Oct. 16, 2000), Butler App. No. CA2000-01-001, unreported. All three children have been in the temporary custody of WCCSB for at least twelve consecutive months subsequent to May 18, 1998. Consequently, in the present case, the trial court should have applied R.C. 2151.414 as amended, which came into effect after the motion for permanent custody was filed, but before the permanent custody hearing began.
Although the trial court failed to apply R.C. 2151.414 as amended, application of the proper version still leads to the conclusion that permanent custody of the children should be granted to WCCSB. Pursuant to R.C. 2151.414, a permanent custody motion may be granted where the decision is in the best interest of the children and the children have been in the care of children's services under an order of disposition by the trial court for twelve or more months of a consecutive twenty-two month period.[1]
Jordan was adjudicated an abused child on March 12, 1998. Jeffrey was adjudicated a dependent child on the same date. Jonathan was adjudicated a dependent child on August 10, 1998. All three children were placed in the temporary custody of WCCSB and it is undisputed that the children remained in the custody of WCCSB throughout the course of this case. Therefore, the children were in the care of WCCSB under an order of disposition made by the trial court, for twelve or more consecutive months in a twenty two month period ending after March 18, 1999. R.C.2151.414(B)(1)(d).
Once a child has been in the custody of children's services for the requisite period of time, permanent custody may be granted where the decision is in the best interest of the child. R.C. 2151.414(B)(1) and (D). The trial court found by clear and convincing evidence that granting permanent custody to WCCSB was in the children's best interest.[2]
Because a parent's constitutionally protected liberty interest is at stake in a permanent custody proceeding, due process requires that the state prove by clear and convincing evidence that the applicable statutory standards have been met. Santosky v. Kramer (1982),455 U.S. 745, 769, 102 S.Ct. 1388, 1403. Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. Id. at 479.
When deciding a permanent custody case, the trial court is required to make specific statutory findings. The reviewing court must determine whether the trial court either followed the statutory factors in making its decision, or abused its discretion by deviating from the statutory factors. See In re William S. (1996), 75 Ohio St.3d 95, 99. Upon review of the record, we conclude that the trial court's finding that it is in the children's best interest that the motion for permanent custody be granted is supported by clear and convincing evidence.
The state concedes that appellant completed most of her case plan requirements. Appellant attended eighty out of eighty-two scheduled visits with the children. Appellant attended and participated in all of the required parenting workshops. Appellant also regularly attended counseling and cooperated with the completion of requested psychological assessments.
However, Dr. Miner observed that appellant was unable to apply the parenting skills she learned in the parenting workshops during her visits with the children. Appellant was unable to perceive the needs of her children and did not provide any discipline. Dr. Miner concluded that appellant would need substantial and consistent assistance for at least the next five years, and perhaps longer, to be able to parent the children. Caseworker Joseph Atkinson testified that he was required to intervene to protect the children's safety during appellant's visits, and that appellant would focus her undivided attention on the infant, virtually ignoring the other two children. Atkinson also testified that appellant was unable to apply the skills she learned in the parenting workshops.
All three of the children have special needs, and appellant herself has special needs. Appellant admits that she cannot care for the children without assistance, and that she would not be able to care for Jordan, even if he were the only child in the home. The children have been in foster care for a considerable amount of time and have bonded with their respective foster parents. Jonathan is especially bonded to his foster mother, having been in her care since infancy. Jonathan and Jeffrey's foster parents have expressed a desire to adopt them. Shirley Cole, WCCSB adoption coordinator, testified that all three children are adoptable in spite of their special needs.
Considering this evidence and the trial court's findings, we find there was clear and convincing evidence to support granting permanent custody of Jordan, Jeffery and Jonathan to WCCS. The assignment of error is overruled.
YOUNG, P.J., and VALEN, J., concur.
[1] R.C. 2151.414, as amended, provides in relevant part:
 Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
* * *
 (D) In determining the best interest of a child * * *, the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition issued under section 2151.353 or 2151.415
of the Revised Code for twelve or more months of a consecutive twenty-two month period ending on or after the effective date of this amendment;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (12) of this section apply in relation to the parents and child. (Emphasis added.)
[2] The factors that the trial court considered when determining the children's best interests under the prior version of R.C. 2151.414 are applicable to the best interest determination under R.C. 2151.414 as amended. See In re Morris (Oct. 16, 2000), Butler App. No. CA2000-01-001, unreported.