OPINION
This is an appeal from the judgment of the Allen County Common Pleas Court, Juvenile Division granting permanent custody of the minor Michael Evans to the Allen County Children's Protective Services Unit.
Michael Evans, age 5, was taken from his mother, appellant Patricia Evans, on February 1, 1999 at St. Rita's hospital in Lima. According to the Notice of Emergency Removal and Shelter Care filed by appellee Allen County Children Services Board (ACCSB), Michael's removal was prompted by appellant's alleged neglect of one of Michael's siblings who had suffered 3rd degree burns on her mouth from chewing on an electrical cord. The notice further alleged that there were numerous unexplained bruises of varying ages on another sibling that indicated abuse. Based on this, Michael was adjudicated a dependent child on March 15, 1999. On April 29, 1999 at a dispositional hearing, appellant and appellee stipulated that it would be in Michael's best interests to remain in the temporary custody of ACCSB. Michael was placed into foster care where he remains today. Michael's father, Randy Rayburn, is not a party to this appeal.
During the course of this case ACCSB filed for, and appellant stipulated to, two extensions of the order for temporary custody. ACCSB filed a motion for permanent custody on December 20, 2000 alleging, interalia, that Michael's parents had demonstrated a lack of commitment to their child by regularly failing to support, communicate, or visit the child; that the parents are unwilling to support Michael and both parents lack consistent visitation. Finally the complaint alleged that the ACCSB had exhausted all reasonable services towards parent child reunification.
In a Judgment Entry filed April 3, 2001 the trial court granted permanent custody of Michael to ACCSB. The trial court found that ACCSB had made reasonable good faith efforts and provided services required by the case plan to prevent or eliminate the need to remove the child from the home and to make it possible for the child to be returned to a parent. The trial court also found that the parents have failed to remedy the problems that initially caused the child to be placed outside the home and that the parents had demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so. Finally, the trial court made a finding that granting permanent custody to ACCSB would be in Michael's best interests. It is from this order that Appellant Appeals.
The appellant asserts the following assignments of error:
 The trial court erred in granting permanent custody to Allen County Children Services Board, as the determination of the court was not supported by clear and convincing evidence.
 The trial court erred in granting permanent custody to Allen County Children Services Board when the board did not use reasonable case planning and diligent efforts at reunification with the parent.
We begin by noting that the parent has a fundamental right to care for and have custody of his or her child. In re Shaeffer Children (1993),85 Ohio App.3d 683, 689, citing Santosky v. Kramer (1982), 455 U.S. 745,753, 102 S.Ct. 1388, 1394. This fundamental right is not lost based on a parent's temporary loss of custody. Id at 751-755. Indeed, the United States Supreme Court has stated, "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, "Stanley v. Illinois (1972), 405 U.S. 645, 651, 92 S.Ct. 1208,1212-1213, citing Prince v. Massachusetts (1944), 321 U.S. 158, 166,64 S.Ct. 438 (Citations omitted.) The right of parents to raise their children, coupled with the concomitant right of children to be raised by their parents, may not be interfered with unless the parent is unfit.Baker v. Baker (1996), 113 Ohio App.3d 805 citing Quilloin v. Walcott
(1978), 434 U.S. 246, 98 S.Ct. 549.
 Second Assignment of Error
Inasmuch as Appellant's first assignment of error is inherently dependent on an analysis of the second, we consider the second assignment of error first. Appellant's second assignment of error alleges that ACCSB failed its duty to use reasonable case planning and diligent efforts at reunification with the parent. Specifically, appellant argues that the trial court violated R.C. 2151.419(A)(1) which, in relevant part states:
 Except as provided in division (A)(2) of this section, at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts.
Appellee's argument is not well taken since ACCSB filed its motion for permanent custody pursuant to R.C. 2151.414 and R.C. 2151.419(A)(1) does not apply to a hearing held on a R.C. 2151.414 motion. Throughout her brief, appellant mistakenly refers to appellee's motion for permanent custody as being filed pursuant to R.C. 2151.353 which establishes the dispositions a court may make upon the initial determination that a child is dependent, neglected, or otherwise abused. In this case, the trial court did not terminate appellant's parental rights upon Michael's initial disposition as a dependent child, but rather some two years later upon the agency's filing a motion pursuant to R.C. 2151.414. Therefore, R.C. 2151.419 does not apply and the trial court was not obligated to make a finding that the agency had made diligent efforts to achieve the goal of reunification.
Notwithstanding the inapplicability of R.C. 2151.419, appellant's assignment of error has independent merit, for, regardless of what findings the trial court was required to make, ACCSB still bears the ultimate duty to use diligent efforts to achieve the goal of family reunification.
Case plans are the tool that child protective service agencies use to facilitate the reunification of families who, for whatever reason, be it abuse, neglect or otherwise, have been temporarily separated. Case plans establish individual goals, concerns and the steps that the parent and agency will take in order to achieve reunification. R.C. 2151.412
establishes the guidelines for case plans and according to R.C.2151.412(E)(1) all parties to the plan are bound by the terms of the journalized case plan. "A party that fails to comply with the terms of the journalized case plan may be held in contempt of court." R.C.2151.412(E)(1)
2151.412(E)(1) (F)(1) goes on to state:
 All case plans for children in temporary custody shall have the following general goals: * * *
 (b) To eliminate with all due speed the need for the out-of-home placement so that the child can safely return home.
Certainly the general assembly would not have established such a requirement so that these goals could be relegated to meaningless words on paper and not diligently pursued. Therefore, R.C. 2151.412 creates an affirmative duty on the part of child protective services agencies to make reasonable, diligent efforts to meet the stated goals of a case plan.
In accordance with R.C. 2151.412, ACCSB prepared a case plan for Michael upon his removal from the home. The appellant signed the case plan on February 26, 1999 along with the caseworker, the family aide and Michael's appointed guardian ad litem, John Leahy. Notably, the case plan listed four family strengths:
1. Child is developmentally on target
2. Patricia has no history of substance abuse
3. Patricia's response to stress
4. Patricia's bond with children.
The plan also listed three concerns which included:
1. Patricia's coping skills
 2. The child's ability to protect himself and the importance of proper supervision
3. The child's behavior
The case plan then went on to map out the necessary steps that Patricia and ACCSB would jointly take in order to remedy the aforementioned concerns. For instance, Patricia was to learn to cope with stressful parenting situations and proper parenting techniques. Patricia was to work with the Family Resource Center, the caseworker and a family aid. ASSCB would also play a part in this reunification, through the assigned caseworker, by making proper referrals and ensuring that transportation was made available to Patricia. The caseworker and the family aid were to work together to ensure that Patricia had all the necessary services available to her. Furthermore, the caseworker and family aid were to work with Patricia on a 1:1 basis to help her improve on her parenting skills. Progress as to Patricia was to be measured through home visits and observation at visitation. In addition, a formal review would be conducted every six months in order to assess the progress of the goals articulated in the case plan.
For eleven months directly following the implementation of the case plan, the record is silent as to any activity on the part of ACCSB or Patricia. There are no observations, reviews, documented conversations, visitation schedules, or testimony as to any matter pertaining to achieving the goals outlined in the case plan. There is only the testimony of Lorrie Wilson, the assigned caseworker, who stated that during this period Michael was visiting with his mother at his maternal grandmother's house every other weekend. Visitation halted for a short time in August 1999 due to Patricia's incarceration for a child endangering conviction stemming from the incident with Michael's sibling. According to the caseworker, after Patricia was released, the visitation resumed but was "less consistent." There is no testimony or documentation that would indicate exactly how many visitations Patricia attended or missed through the end of 1999.
Nearly a year after the first case plan was signed, ACCSB filed a "semi-annual" review on January 6, 2000. The review was not signed by Patricia and there is no indication as to whether she was contacted in regards to this review. The review contains sparse information as to the progress on the case. In terms of Patricia's parenting skills, the cause of Michael's removal, the review mentions that Patricia was getting counseling at Miami County Mental Health Center. The review does not mention visitation as a concern nor does it list any new concerns.
An amended case plan was filed the next day on January 7, 2000 in order to address the fact that paternity had been established for Michael. The filed plan is an exact copy of the plan filed eleven months earlier and was not signed by appellant.
On May 17, 2000 the parties appeared before a magistrate for hearing on a Motion to Extend Temporary Custody filed by ACCSB. The magistrate's decision states that the parties agreed to an extension of temporary custody and that Patricia agreed to complete parenting classes and to participate in individual counseling. Furthermore, the parties agreed that Patricia would regularly attend scheduled visitation as arranged by theagency.
On June 19, 2000 a second amended case plan was prepared and signed by the guardian ad litem and the caseworker. Again, this plan is the exact same plan as the first and did not include any modifications or updates. On June 30, 2000 the trial court adopted the decision of the magistrate and extended temporary custody.
According to the record, Patricia began counseling as ordered in August 2000 and to date has completed two parenting classes. There is no indication in the record as to her progress in counseling, positive or otherwise. Furthermore, the record does not reflect Patricia's progress in parenting education other than to show that she has completed two class sessions without missing one class.
ACCSB completed and filed yet another semi-annual review of the case plan on July 7th, 2000 less than a month after the extension of temporary custody. Again, this review reveals little about the progress of the original goals of the case plan. Specifically the review states that placement was to continue due to "mother's lack of compliance" without explaining how Patricia failed to comply.
The next review occurred December 28, 2000 in conjunction with ACCSB's filing for permanent custody. Again, there are allegations that Patricia had failed to complete case plan objectives without elaboration.
The matter came before the trial court for hearing on March 6, 2001. ACCSB presented one witness, Lorrie Wilson, the ACCSB caseworker. Wilson testified that the Appellant's visitation of Michael over the course of the last two years was "sporadic". Wilson further explained that "as far as visitation was concerned, Patricia was expected to call the agency to set up visitation. . ." The caseworker admitted that the appellant was attending counseling sessions and had completed two parenting classes. The caseworker stated that while Patricia had completed "some things" in the case plan, it was the agency's position that Patricia had failed to visit Michael enough. Therefore, she stated, permanent custody should be awarded to ACCSB.
The appellant testified at the hearing that she moved out of the Allen County area shortly after Michael was removed from her custody in February 1999 and currently lives in Troy, Ohio. Patricia moved to Troy to live with her mother. Patricia moved into her current residence in Troy with her new husband in July 2000. No one from ACCSB has ever been to her home.
The Appellant testified that she was employed but did not have a driver's license. Patricia testified that her visitation with Michael was inconsistent because of the 60 mile distance between Lima and Troy. She testified that she informed ACCSB, through Lorrie Wilson, that she did not have a driver's license. According to Appellant, ACCSB did not offer her an alternative form of transportation and when she asked for help she was told to ask a friend or take a cab. Patricia said that she checked into other forms of transportation but the only thing available was a cab which would cost over 100 dollars per trip.
Patricia also testified that on at least two occasions since moving out of her mother's house she called Lorrie Wilson to request a visit with Michael and was told to have her mother call to set up the visitation. Patricia testified that she believed that the only way she was permitted to see Michael was through her mother and described her relationship with her mother as "shaky" at times.
The common theme running through this case is a lack of effort to reunite Michael with the appellant. Appellee alleges that Michael's parents have demonstrated a lack of commitment to their child but themselves can not point to one occasion during the course of this case that they took affirmative steps to remedy the reasons for which Michael was removed in the first place.
Most disturbing are allegations that appellant failed to achieve the goals outlined in the case plan. The case plan states that in order to address concerns with appellant's coping and parenting skills, "Patricia will work with appropriate service provider Family Resource Center to learn coping skills as well as appropriate parenting skills." The agency's part of this was, "Caseworker will make proper referrals as well as ensure that transportation is made available." The case plan then states, " Patricia will meet with FA on regular basis to learn supervision skills that would be appropriate for her children." In conjunction with this the case plan said, "FA [family aide] and CW[caseworker] will work together to ensure that Patricia has needed services available and they are easily accessible to her." The third concern, Michael's behavior, was to be addressed by regular appointments and by helping appellant learn to improve on her parenting skills.
According to this case plan, Patricia's only problem was her parenting skills. Patricia has taken two parenting classes and is going to counseling. And yet, there is nothing in the record that explains why after two years, two parenting classes, and counseling that this simple goal could not be achieved. The record discloses no extenuating circumstances such as substance abuse or mental disorders.
Furthermore, there is no evidence in the record to show that ACCSB followed through with any of its obligations as stated in the case plan. There are no documented observations of Michael or Patricia. No documented occasions in which an ACCSB worked with Patricia 1:1 to improve her parenting skills. The record is replete with documents that say nothing and provide little understanding as to how a child could be caught up in the system for two years based solely on his mother's need for parenting skills.
This court, in the case In re Brown (1994), 98 Ohio App.3d 337 had occasion to consider a similar set of facts. In that case, we held that Marion County had failed to use diligent efforts to unite a child with either of her natural parents where there were never any regularly scheduled visits. Instead, the parents had simply been directed to make arrangements for weekly one-hour visits to be supervised by county employees in a setting non-conducive to the maintenance or development of close parent-child relationship.This court observed in Brown that the goals of the case plan were "the most general of goals and these goals were directed mainly toward altering the behavior of [the child's parents]." Id. at 344.
Likewise, in the case at bar, the case plan lists general goals towards altering appellant's behavior. And, as in the Brown case, the record fails to indicate that ACCSB made substantial efforts to this end. In its brief, as well as during the hearing, ACCSB places great emphasis on the fact that appellant's visits with her son were sporadic. Yet, it was the agency's duty, per the case plan as well as the magistrate's order extending temporary custody, to schedule visitation and to ensure the appellant had transportation. Lorrie Wilson stated at the hearing that she could have made a referral for transportation but did not and that visitation was left up to the appellant to initiate and set up.
When presented with appellant's transportation difficulties, ACCSB told Patricia to take a cab. This is unreasonable. Similarly, the Tenth District Court of Appeals in In re Smart (1984), 21 Ohio App.3d 31
considered a case where a visitation schedule required the appellant to travel from Canton, Ohio to Columbus, Ohio to visit the child. The court determined that the fact that appellant was only capable of making four such visits did not demonstrate the futility of setting up a comprehensive reunification plan, but, rather, demonstrated the lack of good faith on the part of the agency in setting up visitation which required appellant, who was unemployed and without transportation, to either borrow a car or find $32.50 for the round-trip bus fare from Canton to Columbus. The court called this visitation schedule unreasonable. Id. at 35. In the current case, the agency's failure to meet its own obligations under the case plan militates against its assertion that appellant's sporadic visitation suggests a lack of commitment on her part.
Therefore, because the record now before this court does not demonstrate that the agency used reasonable or diligent efforts to reunite Michael with the appellant, appellant's second assignment of error is well taken.
 First Assignment of Error
Keeping the fundamental right of parents to raise their child in mind, the termination of parental rights is an alternative of last resort; sanctioned only when the welfare of a child necessitates such action. SeeIn re Wise (1994), 96 Ohio App.3d 619, In re Cunningham (1979),59 Ohio St.2d 100. In her first assignment of error Appellant asserts that the trial court's award of permanent custody to ACCSB was not supported by clear and convincing evidence. We agree.
"When deciding a permanent custody case, the trial court is required to make specific statutory findings." In Re Rodgers (2000),138 Ohio App.3d 510, 520. As a preliminary matter, it is important to recognize recent changes in the R.C. 2151.414(B)(1), the statute that regulates the standard for granting a public service agency's motion for permanent custody. In 1999, the Ohio 122nd General Assembly enacted House Bill 484 significantly changing R.C. 2151.414(B)(1) which now states:
 Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines * * * by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency * * * and that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 (b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
The statute places a new significance on the amount of time a child has been in the custody of a protective agency by making it a factor for determining the standard for granting a motion for permanent custody. Prior to the change, the standard was the same regardless of how long a child had been in custody. Under the old standard, for children not abandoned or orphaned, a trial court could grant an agency's motion for permanent custody upon a clear and convincing showing of 1) the best interest of the child and 2) whether or not the child could be placed with his parents within a reasonable time. See In re William S. (1996),75 Ohio St.3d 95, 99.
Under the current version of 2151.414(B)(1), once a child has been in the custody of a children's protective agency for twelve or more consecutive months the court can grant permanent custody to the agency upon a finding that it would be in the best interests of the child and can forgo an analysis into whether child can be placed with either parent within a reasonable amount of time. See In Re Rodgers (2000),138 Ohio App.3d 510 (Holding that R.C. 2151.414 as amended by H.B. No. 484 was a remedial statute and retroactive application of this law did not violate the appellant's rights under the Ohio Constitution.)
In the case sub judice, the trial court made a finding that 2151.414(B)(1)(d) was satisfied as Michael had been in the temporary custody of a public children services agency under one or more separate orders of disposition for twelve or more months of a consecutive twenty-two month period. The record supports such a finding by the trial court. Michael was taken into custody on February 1, 1999 and ACCSB filed the motion for permanent custody on December 20, 2000.
The only remaining issue, therefore, is whether there was clear and convincing evidence to support the trial court's finding that an award of permanent custody to ACCSB was in Michael's best interests. Clear and convincing evidence is that evidence which creates a firm belief as to the facts sought to be established. In re Rodgers (2000),138 Ohio App.3d 510, 519 citing Cross v. Ledford (1954), 161 Ohio St. 469.
When considering the best interest of a child with respect to permanent removal the trial court is bound by R.C. 2151.414(D) which states:
 (D) In determining the best interest of a child at a hearing * * * the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
In the case at bar, the trial court stated in its judgment entry that it had considered the factors enumerated in 2151.414(D). The court did not articulate which of the factors it had found nor did it indicate any other factors it had considered but rather made a perfunctory statement that permanent placement with ACCSB would be in Michael's best interests.
Without the advantage of knowing the factors the trial court based its decision on, we are troubled by the overwhelming lack of documentation or other evidence that would lend itself to the conclusion that the termination of parental rights would be in the best interests of Michael. Upon our own consideration of the record and the factors enumerated in 2151.414(D), this court is unable to identify evidence which would lend itself to that conclusion.
R.C. 2151.414(D)(1) directs the court to examine Michael's interaction and relationships with his parents and other significant people in his life. The record fails to provide any indication as to how Michael and his mother interact. We know that Michael has visited with his maternal grandmother on numerous occasions but have no information as to the status of that relationship. The record also provides a great deal of information that would indicate that when Michael lived with the appellant he had severe behavioral problems and continues to have them two years since his removal. And while the record shows that he has made improvements since going into foster care and receiving therapy, there has not been the kind of drastic improvements to indicate that being away from his mother has been beneficial to Michael or that appellant was the source of the behavior problems. Also absent from the record is agency observations of Michael's relationship with his foster parents.
The next factor R.C. 2151.414(D) directs us to is the wishes of the child or as expressed by the guardian ad litem. Michael's guardian ad litem, John Leahy, filed a report and recommendation with the court. The report indicated that Michael's behavior, which had been a concern from the beginning of this case, had improved while in foster care. Michael is currently being treated for Attention Deficit Hyperactivity Disorder which has hindered his academic progress. The report indicates that Michael struggled through kindergarten and is currently failing most of his subjects in the first grade. The report states that Michael's foster parents expressed concern over Michael's lack of contact with the appellant. The guardian ad litem admits to little contact with the appellant over the course of the two-year case but acknowledges that Patricia informed him that she had not visited with Michael in a while because she was having transportation problems. The guardian also based his report on information provided to him by the caseworker, Lorrie Wilson. The report contains no independent assessment of Patricia's parenting abilities or her interaction with Michael.
The report filed by Michael's guardian ad litem recommends that custody be granted to ACCSB. And while this could be compelling to the court, the guardian bases his opinion on the appellant's alleged failure to complete her case plan goals and her inability to properly care for Michael. Since we've already discussed the fact that the appellant did in fact comply with the case plan goals, we do not address the guardian ad litem's presumptions further. With respect to Patricia's inability to care for Michael, we find nothing in the record that would justify such a conclusion.
The final two considerations under R.C. 2151.414(D) are Michael's custodial history and his need for legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
We recognize that Michael has been in the custody of the State for nearly 32 months. We recognize the importance of permanent placement for Michael.
However, the record does not show why legally secure placement could not occur without a grant of permanent custody to the agency. There is no information about why the appellant could not resume her care of Michael. She does not have any dependencies on drugs or alcohol. She is employed. When directed, she completed parenting classes and has started counseling. There is no information as to her progress in counseling or parenting classes, positive or otherwise. We do not have any information as to the condition of her home, again, positive or otherwise. The record provides no evidence that would lend itself to the conclusion that Patricia Evans could not resume custody of Michael tomorrow.
In conclusion we recognize that the standard for reviewing a trial court's grant of permanent custody is abuse of discretion and that an abuse of discretion is more than an error in judgment. Accordingly, we find that the trial court's cursory finding that a termination of parental rights would be in Michael's best interests, was not supported by the record and therefore is arbitrary and constitutes an abuse of discretion.
Appellant's first assignment of error is well taken. Accordingly, the judgment of the Allen County Court of Common Pleas, Juvenile Division, isREVERSED and REMANDED for disposition in accordance with this opinion.
WALTERS, P.J. concurs.
SHAW, J., concurs in judgment only.