OPINION
{¶ 1} Appellant, Pamela Shelton, appeals from the judgment entered by the Juvenile Division of the Trumbull County Court of Common Pleas. The trial court granted appellee's, Trumbull County Children Services Board ("TCCSB"), motion for permanent custody of appellant's daughter, Pamela Gordon.
{¶ 2} Pamela was born on June 28, 1990, and was eleven years old at the time of the hearing. Her alleged biological father, Frank Gordon, did not enter an appearance throughout this case and is not involved in this appeal.
{¶ 3} Pamela and her brother Brian, who is four years older than she, resided with their mother in Cleveland. Both children were removed from their mother's care in 1994, through a Cuyahoga Juvenile Court proceeding when their mother was hospitalized for psychiatric reasons and was unable to care for the children. The children were placed with their maternal cousins, Wendy and Robert Butler, who resided in Girard, Ohio. Later in 1994, both children were adjudicated to be dependent and neglected children by the Cuyahoga Juvenile Court. In 1996, the Butlers were granted legal custody of both children.
{¶ 4} After the children had been placed with the Butlers, Pamela began exhibiting behavioral problems including: not sleeping more than a few hours a night and then waking and roaming through the home destroying property, and openly masturbating frequently. The Butlers found they were unable to control her behavior and voluntarily placed Pamela in the temporary custody of TCCSB. Pamela underwent intensive therapeutic treatment where it was determined that her behavioral problems were related to past abuses she experienced while in her mother's care. She continued to be in TCCSB's custody until August 1999, when she was reunified with the Butlers and her brother. The Butlers were granted temporary custody at that time. The court restored legal custody to the Butlers in October 1999. The mother, Pamela Shelton ("Shelton"), came forward at the October 1999 hearing, requesting visitation with Pamela only. The court determined, based upon Pamela's mental status, her outbursts after receiving written correspondence from her mother, and the past history of sexual abuse, that visits with her mother would adversely affect her treatment progress and visitation was denied.
{¶ 5} The Butlers continued caring for Pamela until November 2000, when they again sought the assistance of TCCSB because they were unable to control Pamela's disruptive behavior. The Butlers again voluntarily placed Pamela into TCCSB's temporary custody and she was placed in a residential treatment facility. A case plan for reunification with the Butlers was prepared and filed with the court. The case plan was approved and ordered into effect. However, the Butlers informed TCCSB in early January 2001, that they were unwilling and unable to work towards a reunification with Pamela. Pamela continued to undergo therapeutic treatment until it was determined that residential care was no longer necessary.
{¶ 6} TCCSB filed a motion for permanent custody with the court on June 20, 2001, to terminate parental rights in order to seek adoption for Pamela. A trial on the matter was initially scheduled for August 14, 2001. Shelton appeared on that date and requested court-appointed counsel. Counsel was appointed for Shelton and the trial was continued to October 23, 2001. On November 14, 2001, the magistrate issued a decision recommending that permanent custody of Pamela be granted to TCCSB.
{¶ 7} Shelton filed timely objections to the magistrate's decision on November 28, 2001. The trial court overruled Shelton's objections and approved the magistrate's decision on May 3, 2002. Shelton subsequently filed this appeal raising the following assignments of error:
 {¶ 8} "[1.] The trial court erred in granting permanent custody of the minor child to Trumbull County Children Services Board due to the fact that no evidence was offered to demonstrate that the child could not be returned to the natural mother within a year's period of time.
 {¶ 9} "[2.] The trial court erred in granting the permanent custody to Trumbull County Children Services Board in that said decision was not in the best interest of the minor child.
 {¶ 10} "[3.] The trial court erred in granting permanent custody of the minor child to Trumbull County Children Services Board because the agency failed to establish a specific plan pursuant to O.R.C. Section 2151.413(E)."
{¶ 11} Before granting permanent custody of children to the state, the trial court is required to make specific statutory findings. The reviewing court must determine whether the trial court followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors.[1]
{¶ 12} R.C. 2151.414, governing permanent custody hearings, states in pertinent part:
 {¶ 13} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 14} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
{¶ 15} "(b) The child is abandoned.
 {¶ 16} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 17} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 18} "Clear and convincing evidence is that evidence `which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'"[2]
{¶ 19} If the court determines, by clear and convincing evidence, that one or more of the sixteen factors enumerated in R.C. 2151.414(E) exists as to each of the child's parents, it shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent.
{¶ 20} Appellant argues that the court had no evidence before it to determine that Pamela could not be placed with her mother within one year's time pursuant to R.C. 2151.414(E)(2), which states:
 {¶ 21} "Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section * * *." (Emphasis added.)
{¶ 22} A careful review of the record in this case demonstrates that the court did have clear and convincing evidence before it to determine that Pamela could not be placed with her mother within one year. Specifically, a report from Shelton's psychiatrist admitted into evidence, stated that the psychiatrist was not certain that Shelton could care for a child with special needs but that she was demonstrating that she could now care for herself. Shelton testified that in April 2001, she entered into a partial hospitalization mental health program that was to last for one year, or approximately six months following the hearing.
{¶ 23} The court also relied on other factors enumerated in R.C.2151.414(E) in finding that Pamela could not be returned to Shelton. Specifically, the court found that pursuant to R.C. 2151.414(E)(1), Pamela could not be placed with her mother because Shelton, "has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." Shelton had not been able to stabilize herself within a seven-year time period to regain custody of Pamela or to obtain supervised visitation with Pamela as a consequence of her own mental health issues and Pamela's special needs. The court found that Shelton disappeared and her whereabouts were unknown from November 2000 to July 2001, and she failed to participate in the case plan until the permanent custody hearing. Moreover, the magistrate noted, "[t]he health caregivers of the mother report that mother is ready for visits, but not custody. The child is not ready for visits." Michael Sylvester, coordinator of the group home where Pamela was residing, testified that Pamela was uncomfortable in talking about her mother and expresses fear that she may acquire the same mental problems her mother has.
{¶ 24} The magistrate also determined that, pursuant to R.C.2151.414(E)(16), another factor weighing heavily against Shelton obtaining custody was the past history of sexual abuse suffered by the children from Shelton's boyfriend while under her care.
{¶ 25} Thus, the trial court had before it clear and convincing evidence to demonstrate that permanent custody of Pamela should be granted to TCCSB. Therefore, Shelton's first assignment of error is without merit.
{¶ 26} In her second assignment of error, Shelton argues that granting permanent custody to TCCSB was not in the best interest of the child and was improper because of the strong bond between Pamela and her older brother, Brian, and Pamela's own mental health problems which make her chances at adoption highly unlikely.
{¶ 27} R.C. 2151.414(D) provides:
 {¶ 28} "In determining the best interest of the child * * * the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 29} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 30} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 31} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 32} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 33} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
{¶ 34} The trial court made specific findings as to each of the preceding factors. The court found that there was no relationship or bond with the biological father. There was poor interrelationship with the mother and no bond with the mother. There was a bond with her prior custodians, the Butlers, but they refused to continue as custodians. The court also found there was a strong bond with her brother.
{¶ 35} The court found that Pamela has expressed clearly that she does not wish to live with her mother and wished to be adopted by a family and a report issued by her guardian ad litem, Patricia A. Knepp, clearly states that, as the Butlers are unwilling and unable to continue as custodians, and there are no other family members in the area able to care for her, the best alternative for Pamela is to be placed in the permanent custody of the TCCSB for the purpose of seeking adoptive placement.
{¶ 36} The court found that from October 1998 to the date of the hearing, Pamela had been in foster care for twenty-two months, with relatives for fourteen months and has spent no time under her parents' care.
{¶ 37} Moreover, the court found that Pamela has a need for legally secure permanent placement which cannot be achieved without granting permanent custody to TCCSB and that several factors from R.C.2151.414 (E) (7) to (11) apply in relation to Pamela and her parents.
{¶ 38} Although the record does show that Pamela has had a number of behavioral issues, testimony from her counselors demonstrates that she has made progress and wants to be part of a family. In addition, those same counselors testified that contact with her mother may cause Pamela's behavior to worsen.
{¶ 39} Shelton also contends that the close bond between Pamela and her brother may not survive if Pamela were to be adopted. However, the record indicates that Pamela's brother, Brian, was sixteen at the time of the hearing, and, as he reaches emancipation, he can continue to maintain his relationship with Pamela. Moreover, Shelton has no relationship with her son, Brian, and has not demonstrated how achieving custody of Pamela would facilitate the relationship between Pamela and her brother.
{¶ 40} The trial court did not err in finding that granting permanent custody to TCCSB was in the best interest of the child. Shelton's second assignment of error is without merit.
{¶ 41} In her third assignment of error, Shelton contends that TCCSB failed to establish an adequate adoption plan pursuant to R.C.2151.413, which states:
 {¶ 42} "(E) Any agency that files a motion for permanent custody under this section shall include in the case plan of the child who is the subject of the motion, a specific plan of the agency's actions to seek an adoptive family for the child and prepare the child for adoption."
{¶ 43} Shelton argues that the only plan developed by TCCSB was that it hoped to find an adoptive home for the child and that the wording of the statute requires more specific plans.
{¶ 44} The record reveals that TCCSB did file a case plan with the court on May 14, 2001, stating that adoption was the ultimate goal for Pamela. The case plan outlined treatment plans and goals for Pamela in order to stabilize her behavior. The plan also noted the importance of maintaining a relationship with her brother. Testimony at the hearing indicated that TCCSB was prepared to initiate the process of preparing Pamela for adoption upon a grant of permanent custody. Other Ohio Appellate Districts have held that R.C. 2151.413(E) does not require a specific adoption plan either to be filed prior to permanent custody being granted.[3] We agree. An agency is not required to set forth an exact plan of adoption until permanent custody is granted. A case plan outlining the ultimate goal of adoption and the agency's treatment actions to prepare the child for the adoption process is in accord with the requirements of R.C. 2151.413(E).
{¶ 45} Shelton's third assignment of error is without merit.
{¶ 46} Parental rights should only be terminated as a last resort alternative when necessary to protect the welfare of the children.[4]
In the instant case, Pamela was in the custody of TCCSB and her cousins for the majority of her life with little or no contact with her mother. Pamela continues to express anxiety and fear toward her mother. Pamela's counselors and guardian ad litem have concluded that contact with her mother would be detrimental to her mental health. Shelton's psychiatrist concluded that she is not ready to care for Pamela and her special needs.
{¶ 47} The trial court properly followed the statutory factors and did not abuse its discretion when it found, by clear and convincing evidence, that the granting of permanent custody to TCCSB was in Pamela's best interest.
{¶ 48} The judgment of the trial court is affirmed.
JUDITH A. CHRISTLEY, J., DIANE V. GRENDELL, J., concur.
[1] In re Rodgers (2000), 138 Ohio App.3d 510, 520, citing In reWilliam S. (1996), 75 Ohio St.3d 95.
[2] In re Rodgers at 519, quoting Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
[3] See In re Cavender, (Mar. 19, 2001), 12th Dist. No. CA2000-06-037, 2001 Ohio App. LEXIS 1262; In re McCutchen, (March. 8, 1991) 5th Dist. No. 90-CA-25, 1991 Ohio App. LEXIS 1089.
[4] In re Cunningham (1979), 59 Ohio St.2d 100, 105.