OPINION
{¶ 1} Appellant, Shawna Cabanas, appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, terminating her parental rights. We affirm the decision of the trial court.
 {¶ 2} Appellant is the biological mother of Scottie Cabanas (born January 23, 1993) and Jessica Cabanas (born January 22, 1991). Their father is deceased. Both children have special needs. Scottie has been diagnosed with bipolar disorder and attention deficit hyperactivity ("ADHD") disorder, while Jessica suffers from post traumatic stress syndrome. Jessica's symptoms were exacerbated when she was sexually abused by appellant's former boyfriend. The abuse allegedly occurred while appellant was in the same room.
 {¶ 3} Appellant has been diagnosed with both mental and physical maladies that affect her ability to parent the children. Appellant is diabetic and is a recovering alcoholic and drug abuser, having remained sober for five years. She has been diagnosed with bipolar disorder, clinical depression, and ADHD. She has been prescribed medications to treat all of the above conditions, however she has had difficulty consistently taking her medications and has experienced difficulty controlling her diabetes with a healthy diet. Appellant's failure to take her medications has regularly lead to breakdowns accompanied by suicide ideation, requiring inpatient psychiatric treatment. Her failure to control her diet has caused her to black out on many occasions, requiring emergency medical treatment.
 {¶ 4} Appellant's mental and physical conditions have lead to a great deal of instability in her life. Because of this instability, the children have a long history of involvement with children's services agencies, often at appellant's request. They were first placed in the custody of Clermont County Children Services Board ("CCCSB") in 1997 when appellant was hospitalized for suicidal ideation. At this time, she was also diagnosed with alcohol and drug abuse problems. The children remained in the custody of CCCSB until July 1998. Upon appellant's release from the hospital, she relocated to Butler County and the Butler County Children Services Board ("BCCSB") became involved with the children.
 {¶ 5} Prior to the present action, the children were returned to appellant's custody several times, only later to be placed in the temporary custody of BCCSB again. They were removed in February 1999, due to appellant's hospitalization for suicidal ideation. They were removed in March 1999 when appellant was again suicidal and unable to handle Scottie's behavior. After being returned to appellant's custody, they were removed in July 1999 when appellant was hospitalized for an infection which aggravated her diabetes. BCCSB was granted temporary custody again in May 2000 when appellant was once again hospitalized for suicidal ideation.
 {¶ 6} The children were last removed in February 2001 when appellant informed BCCBS that she had not been taking her medications, was having a mental breakdown, was unable to control Scottie's behavior, and had been blacking out since she was not following a proper diet. At the time the children were removed, appellant's home was found to be filthy. The children were likewise dirty, wearing dirty, inappropriate clothing. Jessica's hair had to be cut quite short because it had become so matted. Additionally, it was discovered that appellant had been relying on Jessica, then ten years old, to cook, clean, and look after Scottie. Jessica was also required to look after appellant, trying to ensure that she ate properly. When appellant would fail to control her diet, Jessica would have to administer insulin shots to appellant when she blacked out.
 {¶ 7} BCCSB filed a neglect and abuse complaint on February 7, 2001. Appellant stipulated to allegations that Jessica and Scottie were abused and neglected children, and BCCSB was granted temporary custody. The children were placed with a foster family and have remained with the same foster family since. Both children have done well in foster care, where they receive regular medical care and counseling for their individual mental health issues. Scottie has demonstrated a marked improvement in his behavior and both children have shown an improvement in their mental health since they have been in the foster home.
 {¶ 8} Appellant participated in several case plan services. She received counseling through Harbor House and received ongoing psychiatric treatment. She was assigned a case manager through Greater Miami Case Management, who in particular, helped insure that appellant took her medications as prescribed. She also underwent a diabetic evaluation at University Hospital. Although appellant was referred to Children's Diagnostic Center for a psychological assessment, she failed to appear for the appointment she scheduled. Appellant unilaterally discontinued her case management services, against the wishes of BCCSB, and also left the Transitional Living Center, where she had been living, against the advice of BCCSB and case management services. Appellant was eventually able to better manage her diabetes and had lost fifty pounds by the time of the final hearing on this matter.
 {¶ 9} Appellant was granted supervised visitation with the children during the pendency of the proceeding. The visits often were a burden on the children, especially Jessica, as appellant would tell Jessica that she needed her to help at home and would discuss her own medical problems with her. In spite of admonitions not to burden the children with her problems, appellant continued to do so, sometimes covertly by whispering to the children or passing them notes. Appellant brought her present fiancé to one visitation, upsetting Jessica, who was reminded of the past abuse that she suffered from appellant's prior boyfriend. She also brought candy for the children on several occasions, even after she was asked to bring healthy snacks because of Scottie's ADHD and both children's poor dental health. At one point, appellant was unable to visit the children because she was again hospitalized for suicidal ideation.
 {¶ 10} On October 15, 2001, BCCSB moved for permanent custody of both children, noting there were no further services it could offer appellant, and that appellant continually failed to exhibit any stability in her life. BCCSB alleged that it was in the children's best interest that the agency be granted permanent custody. After a hearing on the matter, the trial court granted the motion. Appellant now appeals, raising a single assignment of error:
 {¶ 11} "THE TRIAL COURT'S DECISION PLACING CUSTORY [SIC] WITH THE BCCSB IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
 {¶ 12} In particular, appellant alleges that the evidence presented at trial does not support the conclusion that it is in the children's best interest that BCCSB be granted permanent custody.
 {¶ 13} Natural parents have a constitutionally protected liberty interest in the care and custody of their children. See Santosky v.Kramer (1982), 455 U.S. 745, 102 S.Ct. 1388. A motion by the state for permanent custody seeks not merely to infringe upon that fundamental liberty interest, but to end it. Id. at 759, 102 S.Ct. at 1397. In order to satisfy due process, the state is required to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769, 102 S.Ct. at 1403. Clear and convincing evidence requires that the proof produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Rodgers (2000),138 Ohio App.3d 510, 519, quoting Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 14} Before granting permanent custody of a child to the state, the trial court is required to make specific statutory findings. A reviewing court must determine whether the trial court followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. In re William S., 75 Ohio St.3d 95,1996-Ohio-182.
 {¶ 15} When a state agency moves for permanent custody, the trial court is required, in part, to determine "if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A)(1). In making this best interest determination, the trial court must consider all relevant factors, including but not limited to the following factors enumerated in R.C. 2151.414(D):
 {¶ 16} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 17} In her assignment of error, appellant specifically alleges that it is in the children's best interest that custody be returned to her, and that her parental rights not be terminated. In support of this contention, appellant states that her "continuing participation in her case plan and rehabilitation programs demonstrates her commitment to her children and her desire to develop a stable environment."
 {¶ 18} The trial court carefully considered each statutory factor related to the children's best interest and made relevant findings supported by the record. The children have been placed in foster care on multiple occasions, and have been in foster care with the same family since February 2001. R.C. 2151.414(D)(3). Although the children remain bonded to appellant, they have also bonded with their foster family, who would like to adopt both children. The foster parents ensure that the children attend all counseling appointments, receive appropriate medical and dental attention, and that they take their prescribed medications. R.C. 2151.414(D)(1). Appellant has failed to provide the children with a stable environment due to her continuing and episodic mental and physical breakdowns. Appellant's physical and mental health needs have forced Jessica to assume a parental role, and deprived Scottie of the consistent care and discipline that he requires. R.C. 2151.414(D)(4). Although appellant demonstrated some improved stability in the final months of this proceeding, she has a long history of stabilizing her physical and mental health for short periods followed by relapses. The guardian ad litem concluded that it was in the children's best interest that BCCSB be granted permanent custody. As well, the trial court's in camera interview with the children also supported this position. R.C.2151.414(D)(2).
 {¶ 19} Based on our review of the factors in R.C. 2151.414(D) and all relevant evidence in the record, we find that there was clear and convincing evidence before the trial court that it was in the children's best interest that BCCSB be granted permanent custody. We therefore conclude that the trial court did not err in granting BCCSB's motion for permanent custody. The assignment of error is overruled.
Judgment affirmed.
POWELL and YOUNG, JJ., concur.