OPINION
{¶ 1} Appellant, James Hugle, appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of his two sons to Butler County Children Services Board. We affirm the decision of the trial court.
 {¶ 2} Appellant and Nathalie Nichols are the parents of Andrew Hugle, born February 21, 1995, and Jonathan Hugle, born May 1, 1996. The couple was living apart when the Butler County Children Services Board ("BCCSB") became involved in February 2000. At that time, the children were living with their mother. She contacted BCCSB and requested that the children be removed from her home because she could not control their behavior and threatened to kill herself if the children were not removed. Subsequently, a complaint was filed alleging that Jonathan and Andrew were dependent children. Nichols was initially provided supervised visitation while appellant was not provided with visitation as there was a "no contact order" in place through Hamilton County Court of Common Pleas, Domestic Relations Division. This order was based on appellant's failure to complete court-ordered parenting classes.
 {¶ 3} Appellant's involvement in this matter was only sporadic. He failed to appear at the first two adjudication hearings. He appeared at the third hearing and requested appointed counsel. The trial court granted the request and counsel was appointed to represent him. He failed to appear at the following hearing and was found to be in default. He appeared at the next hearing and was granted one hour per week supervised visitation, conditioned upon his completion of parenting classes and an evaluation by the Children's Diagnostic Center ("CDC").
 {¶ 4} One month later, even though he had not yet complied with the court's orders, the trial court ordered that appellant be given as much visitation as could be arranged. Appellant missed his first scheduled visit. He attended the next scheduled visit, then missed the following one. BCCSB subsequently moved to terminate his visits. A hearing was scheduled on the motion and appellant requested a continuance, which the trial court granted. Appellant failed to attend the hearing which was rescheduled for September 22, 2000. Jonathan and Andrew were adjudicated dependent children at this hearing and appellant's visitation was terminated. Thereafter, appellant did not contact BCCSB with regard to his children until January 2001 when BCCSB filed a motion requesting permanent custody of the children. Appellant finally completed the CDC evaluation in June 2001 and began parenting classes early in 2002.
 {¶ 5} It has been four to five years since appellant was a caregiver to the children. Appellant has been diagnosed with intermittent explosive disorder and is mildly mentally retarded. He lives in a three-bedroom home with his aunt and uncle and a disabled cousin, for whom he helps provide care. According to appellant, the home does not presently have appropriate space for the children. He estimated that it would take three months for him to prepare the home for the children to live with him.
 {¶ 6} A series of hearings were held on the permanent custody motion. As of the final May 2002 hearing on the matter, appellant had not had any contact with the children since December 2000. In making its decision, the trial court considered the report of the guardian ad litem, and heard the testimony of the parties, the children's therapist, BCCSB caseworkers, Dr. Charles Lee, who evaluated the parents, and various others who provided case plan services to the parents. The trial court determined that it was in the best interest of the children that permanent custody be granted to BCCSB and consequently terminated appellant's parental rights.
 {¶ 7} He appeals,[1] alleging that the trial court's decision is not supported by clear and convincing evidence. In particular, appellant alleges that the evidence presented at trial does not support the conclusion that it is in the children's best interest that he not be granted custody and that BCCSB be granted permanent custody.
 {¶ 8} Natural parents have a constitutionally protected liberty interest in the care and custody of their children. See Santosky v.Kramer (1982), 455 U.S. 745, 102 S.Ct. 1388. A motion by the state for permanent custody seeks not merely to infringe upon that fundamental liberty interest, but to end it. Id. at 759, 102 S.Ct. at 1397. In order to satisfy due process, the state is required to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769, 102 S.Ct. at 1403. Clear and convincing evidence requires that the proof produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Rodgers (2000),138 Ohio App.3d 510, 519, quoting Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 9} Before granting permanent custody of a child to the state, the trial court is required to make specific statutory findings. A reviewing court must determine whether the trial court followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. In re William S., 75 Ohio St.3d 95,1996-Ohio-182.
 {¶ 10} When a state agency moves for permanent custody, the trial court is required, in part, to determine "if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A)(1). In making this best interest determination, the trial court must consider all relevant factors, including but not limited to the following factors enumerated in R.C. 2151.414(D):
 {¶ 11} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 12} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 13} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 14} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 15} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 16} In his assignment of error, appellant specifically alleges that it is in the children's best interest that custody be returned to him, and that his parental rights not be terminated. Appellant contends that the trial court failed to give due weight to the appropriateness of his interaction with the children, a statutory factor.
 {¶ 17} To the contrary, we find that the trial court carefully considered each statutory factor related to the children's best interest and made relevant findings supported by the record. Contrary to appellant's assertion, the trial court fully considered appellant's ability to interact with the children and his present relationships with the children. Notably, appellant had had no contact with the children for more than two years during the course of this proceeding, a period of time which represents approximately one third of the children's lives. It was not until after the motion for permanent custody was filed that he underwent the CDC evaluation and began counseling, case plan requirements. His visitation was terminated after he failed to regularly appear for scheduled visits, and in part, because the children were upset and reluctant to visit with him. After visits with appellant the children were notably anxious.
 {¶ 18} Melody Morrow, the children's therapist, testified that she engaged the children in play therapy. Andrew's play themes centered on domestic violence between his parents. Similarly, Jonathan's play related to a father figure who is seen arguing and fighting. Morrow's opinion was that the children had observed domestic violence between their parents. This was confirmed by the children's mother who testified that appellant was the perpetrator of acts of domestic violence against her which were observed by the boys.
 {¶ 19} Dr. Charles Lee, who performed an evaluation of appellant, diagnosed him as mildly mentally retarded and afflicted with intermittent explosive disorder. He expressed concern that appellant's cognitive limitations could result in difficulty assisting the children with their educational needs, medical issues and daily functioning. Dr. Lee also found that appellant's denial that he has an anger management problem would inhibit him from recognizing anger triggers. While appellant did eventually enter counseling to address his anger management issues, it was not until two years after the children were placed in foster care. Appellant failed to undergo a substance abuse evaluation recommended by Dr. Lee.
 {¶ 20} While appellant contends that his failure to be involved in the permanent custody proceeding is based on BCCSB's failure to pursue reunification with him and that he is willing and able to care for the children, the record reveals otherwise. Appellant's involvement in this matter has been at best, sporadic. As observed by the trial court, he admittedly chose to forego "court formalities" in order to preserve his parental rights, instead believing that the children's mother would eventually regain custody. We consequently find this contention to be without merit.
 {¶ 21} Testimony of the BCCSB caseworker and the court-appointed special advocate indicated that Jonathan and Andrew are doing well in foster care, having demonstrated progress with their emotional and behavioral issues. The report of the guardian ad litem confirms the conclusion that it is in the children's best interest that BCCSB be granted permanent custody. His report indicates that while both children remain attached to their mother, neither has expressed a desire to be placed with their father. Finally, the children have been in foster care for more than two years and need a legally secure placement.
 {¶ 22} Upon review of the record, we find that there is clear and convincing evidence that it is in the children's best interest that custody be granted to BCCBS, not appellant. The assignment of error is overruled.
Judgment affirmed.
VALEN, P.J., and POWELL, J., concur.
[1] The children's mother is not a party to the present appeal.