**In re RODGERS.**

[Cite as *In re Rodgers* (2000), 138 Ohio App.3d 510.]

Court of Appeals of Ohio,
Twelfth District, Preble County.

No. CA99–08–017.

Decided June 5, 2000.

*Rebecca J. Ferguson,* Preble County Prosecuting Attorney, and *Martin P. Votel,* Assistant Prosecuting Attorney, for appellee, Preble County Children Services Board.

*Eric E. Line,* for appellant, Connie Sue Kennedy.

VALEN, Judge.

Appellant, Connie Sue Kennedy, appeals from a Preble County Court of Common Pleas, Juvenile Division judgment entry granting permanent custody of her son to the Preble County Children Services Board ("PCCSB"). We affirm the judgment of the trial court.

Oza Thomas Rodgers (d.o.b. 9/19/96) is the son of appellant and Bruce Rodgers. PCCSB filed a complaint alleging that Oza was a neglected/dependant child on December 8, 1997. The complaint stated that Eaton police officers dispatched to appellant's residence found that appellant "appeared to be intoxicated, exhibiting symptoms such as slurred speech, incoherence, and an inability to maintain her balance." The complaint asserted that Oza "was seated in his baby stroller which was in a partially collapsed condition." Oza's "head [was] immersed in a bowl of oatmeal." He "was gurgling the oatmeal and had apparently been in that

position for quite some time as evidenced by dry oatmeal on his face and a deep red mark across the crown of his nose where his head rested on the bowl."

At the shelter care hearing, the trial court found that appellant was under the influence of drugs or alcohol and that she was unable to control her speech. The trial court found Oza to be a dependent child on July 17, 1998, and subsequently granted temporary custody of Oza to PCCSB. PCCSB filed a motion for permanent custody of Oza on February 4, 1999. On May 6, 1999, the Preble County Prosecutor's Office notified the trial court that it intended to proceed under R.C. 2151.414 as amended by H.B. No. 484, which had become effective on ·March 18, 1999. Appellant and Bruce Rodgers opposed proceeding under R.C. 2151.414 as amended by H.B. No. 484 and argued that application of the statute in this situation would violate constitutional prohibitions against retroactive laws. The trial court ordered the matter to proceed under the H.B. No. 484 amendment.

The trial court held a permanent custody hearing on June 22 and July 20, 1999. The trial court filed a judgment entry granting permanent custody of Oza to the PCCSB on July 28, 1999. Appellant appealed, raising two assignments of error for our review. Bruce Rodgers did not appeal.

Assignment of Error No. 1:

"The trial court erred in proceeding in this matter under House Bill 484 instead of Revised Code Section 2151.414."

In her first assignment of error, appellant argues that the trial court erred by applying R.C. 2151.414 as amended by H.B. No. 484 to her case. Appellant insists that retroactive application of this statute is unconstitutional.

■ Before we began our analysis, we note that Ohio statutes enjoy a strong presumption of constitutionality. " 'An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' " *State v. Cook* (1998), 83 Ohio St.3d 404, 409, 700 N.E.2d 570, 576, quoting *Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus. "A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality." *Cook* at 409, 700 N.E.2d at 576, quoting *Dickman* at 147, 57 O.O. at 137, 128 N.E.2d at 63.

■ When ruling upon a motion for permanent custody, a trial court should usually apply the version of the statute in effect at the time that the motion for permanent custody was filed. See *In re Seal* (Mar. 16, 1998), Clermont App. No. CA97–07–066, unreported, 1998 WL 117168; *In re Redding* (Dec. 6, 1999), Butler

App. No. CA98–10–210, CA98–10–224, and CA98–10–226, unreported, 1999 WL 1123009; *In re Galyon* (Sept. 29, 1997), Butler App. No. CA97–01–008, unreported, 1997 WL 598395. In this case, the trial court applied R.C. 2151.414 as amended by H.B. No. 484, even though H.B. No. 484 took effect after the motion for permanent custody was filed. The trial court found that application of H.B. No. 484 did "not run afoul of the Ohio Constitution's prohibition against retroactive laws."

Section 28, Article II of the Ohio Constitution states that "[t]he General Assembly shall have no power to pass retroactive laws." A rule of statutory construction provides that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." R.C. 1.48.

Judicial review of a constitutional question is not appropriate where the case can be disposed of upon other tenable grounds. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 105, 522 N.E.2d 489, 494–495, quoting *Ireland v. Palestine, Braffetsville, N.P. & N.W. Turnpike Co.* (1869), 19 Ohio St. 369, 373, 1869 WL 63. The issue of whether a statute may constitutionally be applied retroactively arises only where it has been determined that the General Assembly intended for a particular statute to be applied retroactively. *Cook,* 83 Ohio St.3d at 410, 700 N.E.2d at 576–577, citing *Van Fossen* at paragraph one of the syllabus. Where " 'there is no clear indication of retroactive application, then the statute may only apply to cases which arise subsequent to its enactment.' " *Van Fossen* at 106, 522 N.E.2d at 495, quoting *Kiser v. Coleman* (1986), 28 Ohio St.3d 259, 262, 28 OBR 337, 339–340, 503 N.E.2d 753, 755–757.

R.C. 2151.414 as amended by H.B. No. 484 states:

"(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

"(a) *The child is not abandoned or orphaned or has not been in the temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition issued under section 2151.353 or 2151.415 of the Revised Code for twelve or more months of a consecutive twenty-two month period ending on or after the effective date of this amendment, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.*

"(b) The child is abandoned.

"(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

"(d) *The child has been in the temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition issued under section 2151.353 of the Revised Code for twelve or more months of a consecutive twenty-two month period ending on or after the effective date of this amendment.*

"* * *

"(D) In determining the best interest of a child * * *, the court shall consider all relevant factors, including, but not limited to, the following:

"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;

"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

"(3) *The custodial history of the child, including whether the child has been in the temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition issued under section 2151.353 or 2151.415 of the Revised Code for twelve or more months of a consecutive twenty-two month period ending on or after the effective date of this amendment;*

"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

"(5) Whether any of the factors in divisions (E)(7) to (12) of this section apply in relation to the parents and child."[1]  (Emphasis added.)

R.C. 2151.414(B)(1)(a) and (d) and R.C. 2151.414(D)(3) each contain language indicating that this statute is supposed to apply retroactively to a limited amount of cases where a motion for permanent custody was filed before the amendment's effective date.  These sections apply to permanent custody cases where a child has been in the temporary custody of children's services under an order of the court following a finding of dependency or neglect "for twelve or more months of a consecutive twenty-two month period ending on or after" March 18, 1999 (the amendment's effective date).  In other words, R.C. 2151.414 as amended by H.B. No. 484 is intended to apply to a permanent custody case

---

1.  A subsequent amendment to R.C. 2151.414 became effective on October 29, 1999.  Because this amendment took effect after the trial court proceedings, we need not discuss it here.

where a neglected or dependent child has been in the temporary custody of children's services for twelve or more consecutive months, counting from a period beginning on or after May 18, 1998. Therefore, the plain language of the statute demonstrates that the General Assembly intended the courts to apply this statute retroactively.

Having found that R.C. 2151.414 as amended by H.B. No. 484 meets the threshold test for retroactive application under R.C. 1.48 because the General Assembly intended that it be applied retroactively, we must next consider whether this legislation violates the Ohio Constitution's prohibition against retroactive laws. The constitutional prohibition against retroactive laws applies only to laws of a substantive nature and not to laws of a procedural or remedial nature. *Van Fossen,* 36 Ohio St.3d at 107, 522 N.E.2d at 496–497; *Kilbreath v. Rudy* (1968), 16 Ohio St.2d 70, 45 O.O.2d 370, 242 N.E.2d 658. This court has previously noted that "the application of a statute affecting procedural rights to all causes tried after the effective date of the statute 'constitutes prospective operation as, in such instances, the date of the trial is the reference point from which prospectivity and retroactivity are measured.'" *Dunn v. Dunn* (2000), 137 Ohio App.3d 117, 124, 738 N.E.2d 81, 86, quoting *Rumery v. Myles* (1983), Henry App. No. 7–83–1, unreported, 1983 WL 7315, at *3.

A statute is substantive in nature if "it impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction." *Bielat v. Bielat* (2000), 87 Ohio St.3d 350, 354, 721 N.E.2d 28, 33, citing *Cook,* 83 Ohio St.3d at 411, 700 N.E.2d at 577. A statute is remedial in nature if it affects only the remedy provided or merely substitutes a new or more appropriate remedy for the enforcement of an existing right. *Van Fossen,* 36 Ohio St.3d at 107–108, 522 N.E.2d at 496–498.

In order to determine whether the changes made by H.B. No. 484 were substantive or remedial, it is necessary to review the prior version of R.C. 2151.414. Under the prior version of R.C. 2151.414, a juvenile court granted permanent custody to an agency if the court found, by clear and convincing evidence, that the best interest of the child warranted a grant of permanent custody and that the child could not be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(B)(1) and (B)(1)(a); *In re Egbert Children* (1994), 99 Ohio App.3d 492, 495, 651 N.E.2d 38, 39–40.

If the court found that any of the factors set forth in the prior version of R.C. 2151.414(E) applied, the court entered a finding that the child could not be placed with either parent within a reasonable time. The prior version of R.C. 2151.414(E) stated:

"If the court determines, by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

"(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties;

"(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *;

"(3) The parent committed any abuse * * * against the child, caused the child to suffer any neglect * * *, or allowed the child to suffer any neglect * * * between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

"(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

"(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;

"(6) The parent violated section 2903.11 * * * of the Revised Code and the child or a sibling of the child was a victim * * *, and the parent who committed the violation poses an ongoing danger to the child or a sibling of the child;

"(7) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing;

"(8) The parent is repeatedly incarcerated and the repeated incarceration prevents the parent from providing care for the child;

"(9) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or mental neglect;

"(10) The parent has committed abuse * * * against the child or caused or allowed the child to suffer neglect * * * and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety;

"(11) The parent committee abuse * * * against the child or caused or allowed the child to suffer neglect * * * and a sibling of the child previously has been permanently removed form the home of the child's parents because the parent abused or neglected the sibling;

"(12) Any other factor the court considers relevant."

When determining whether it would be in the best interest of the child to grant permanent custody of the child to an agency pursuant to the prior version of R.C. 2151.414(D), a juvenile court considered all relevant factors, which included but were not limited to the following:

"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;

"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

"(3) The custodial history of the child;

"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."

We agree with appellant's claim that R.C. 2151.414 is a statute that affects a substantial right. Natural parents have a constitutionally protected liberty interest in the care and custody of their children. *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 1394–1395, 71 L.Ed.2d 599, 606. A motion by the state to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it." *Id.* at 759, 102 S.Ct. at 1397, 71 L.Ed.2d at 610. However, we disagree with appellant's assertion that R.C. 2151.414 as amended by H.B. No. 484 makes a substantive change in the permanent custody statute that violates the constitutional prohibition against retroactive application of laws.

█ The changes that H.B. No. 484 made to R.C. 2151.414 did not change parents' fundamental liberty interest in the care of their children. Long before the enactment of H.B. No. 484, the General Assembly had established the

permanent custody process, which legally terminates parental rights to care for children. H.B. No. 484 changed only the method and procedure by which the court is to determine whether parental rights are to be terminated. A remedial statute affects " 'the methods and procedure by which rights are recognized, protected and enforced, not * * * the rights themselves.' " *Bielat*, 87 Ohio St.3d at 354, 721 N.E.2d at 33, quoting *Weil v. Taxicabs of Cincinnati, Inc.* (1942), 139 Ohio St. 198, 205, 22 O.O. 205, 208, 39 N.E.2d 148, 151–152. Therefore, R.C. 2151.414 as amended by H.B. No. 484 is a remedial statute, and retroactive application of this law did not violate appellant's rights under the Ohio Constitution.

Appellant also contends that R.C. 2151.414 as amended by H.B. No. 484 is an ex post facto law and therefore violates the United States Constitution. Section 10, Article I of the United States Constitution provides, "No State shall * * * pass any * * * ex post facto Law." However, the Ex Post Facto Clause applies only to criminal statutes. *Cook*, 83 Ohio St.3d at 415, 700 N.E.2d at 580, citing *California Dept. of Corrections v. Morales* (1995), 514 U.S. 499, 504, 115 S.Ct. 1597, 1601, 131 L.Ed.2d 588, 593–594. R.C. 2151.414 as amended by H.B. No. 484 is not a criminal statute. Therefore, we find that R.C. 2151.414 does not violate the Ex Post Facto Clause of the United States Constitution.

We hold that R.C. 2151.414 as amended by H.B. No. 484 does not violate the provisions of the Ohio and United States Constitutions with regard to retroactive application of substantive laws. Therefore, the first assignment of error is overruled.

Assignment of Error No. 2:

"The trial court erred in granting permanent custody when the evidence did not support House Bill 484."

In her second assignment of error, appellant claims that it was error for the trial court to award permanent custody of Oza to PCCSB because the trial court's findings were not supported by sufficient evidence.

Because a parent's constitutionally protected liberty interest is at stake in a permanent custody case, due process requires the state to prove by clear and convincing evidence that applicable statutory standards have been met. *Santosky*, 455 U.S. at 769, 102 S.Ct. at 1403, 71 L.Ed.2d at 616–617. Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the

evidence presented. *Id.* at 479, 53 O.O. at 365, 120 N.E.2d at 124. When deciding a permanent custody case, the trial court is required to make specific statutory findings. The reviewing court must determine whether the trial court either followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. See *In re William S.* (1996), 75 Ohio St.3d 95, 661 N.E.2d 738.

At the permanent custody hearing, Nancy Grassmann, a caseworker and parent educator for PCCSB, testified that both appellant and Bruce Rodgers had failed to comply with the case plan.

Appellant failed to fully comply with the case plan. One of the most important goals of the case plan was to assess and address drug dependency by appellant and Bruce Rodgers. Both parents were ordered to submit to random drug testing, and visitation with Oza was conditioned upon taking these tests. Appellant failed to comply with the drug-testing requirements. Appellant testified that she had been smoking marijuana since she was thirteen years old and that "she used to be a regular marijuana smoker" until seventy-nine days prior to the date of her testimony. Appellant admitted to smoking marijuana even when she knew she was pregnant with another child during the time that Oza had been in the care of PCCSB. Because appellant stopped providing samples for drug testing, she had not seen Oza since June 1998.

Appellant testified that she stopped taking drug tests and complying with the case plan because she lacked transportation. However, PCCSB sent letters to appellant at her apartment and her mother's home that discussed the importance of complying with the case plan and offered appellant assistance in obtaining transportation.

Not only did appellant fail to comply with all of the necessary drug testing, she also did not finish her counseling programs. Grassmann testified that appellant began participating in counseling for her substance abuse problem at the Preble County Recovery Center but that appellant's case was terminated when she failed to finish individual counseling sessions. Similarly, the clinical director of the Preble County Counseling Center testified that appellant's case there was terminated because appellant stopped attending sessions.

Grassmann stated that Bruce Rodgers refused to comply with *any* of the requirements of the case plan. Bruce Rodgers did not have any visitation with Oza during the time he was in the custody of PCCSB. Grassmann could only recall one time that Bruce Rodgers even asked about Oza's well-being. Bruce Rodgers also was not present at the second day of the permanent custody hearing.

Mary Myers, a foster care adoption worker for PCCSB, testified that Oza has remained in a foster home since placement on December 4, 1997. Myers observed that Oza has a "strong attachment to this [foster] family" and that the family would like to adopt Oza. In a report to the trial court, the guardian *ad litem* recommended that granting permanent custody of Oza to PCCSB would serve Oza's best interest.

In this case, the trial court concluded:

"[I]t is in the best interest of Oza Rodgers to have his permanent custody awarded to Preble County Children's Services Board due to the fact that the inter-relationship between the child and parents is non-existent, the child having been in temporary custody of the Agency for approximately nineteen (19) months consecutively without any progress in the case plan. The child needs a legally secure placement which cannot be achieved without permanent custody being placed with Children's Services and the child is adoptable."

■ The evidence presented at the permanent custody hearing supports the trial court's decision to grant permanent custody to PCCSB. Pursuant to R.C. 2151.414 as amended by H.B. No. 484, such a decision was in Oza's best interest and Oza had been in the care of PCCSB under an order of disposition by the trial court for twelve or more months of a consecutive twenty-two-month period ending on March 18, 1999. See R.C. 2151.414(B)(1)(d) and (D), as amended by H.B. No. 484.

We note that the trial court's findings also justify a decision to grant permanent custody under the prior version of R.C. 2151.414. In its judgment entry, the trial court makes the specific finding that "Oza cannot and should not be placed in the custody of Connie Kennedy or Bruce Rodgers within a reasonable period of time because both have failed continuously and repeatedly to remedy the situation or condition which caused the child to be removed, despite reasonable care planning and diligent efforts by Preble County Children's Services and other agencies." In addition, the trial court found that "the drug dependency is so chronic and severe that it has rendered the mother unable to provide an adequate permanent home for the child at the present and as anticipated for at least a period of one year following the disposition hearing." The trial court found that "the mother and father have demonstrated a lack of commitment towards the child by failing to regularly support, visit or communicate with the child when able to do so." These findings made by the trial court show that Oza could not be placed with appellant or Bruce Rodgers within a reasonable time pursuant to the prior version of R.C. 2151.414(E).

Because we have found that the trial court properly applied R.C. 2151.414 as amended by H.B. No. 484, the above findings with respect to prior R.C. 2151.414

were not necessary. However, all of the factors discussed above are applicable and support the trial court's finding as to the best interest of the child. The decision to grant permanent custody to PCCSB was supported by sufficient evidence. Appellant's second assignment of error is overruled.

*Judgment affirmed.*

POWELL, P.J., and WALSH, J., concur.