OPINION
{¶ 1} Appellant, Zenobia Johnson, appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of two of her sons to Butler County Children Services Board. We affirm the decision of the trial court.
 {¶ 2} Appellant is the mother of Clayton Johnson, born April 22, 1993, and Elijah Reed, born December 9, 1997.[1] Appellant has continuing drug and alcohol addictions which have plagued her for more than 24 years. She enrolled in and completed no less than seven residential treatment programs for her addictions and each time has relapsed. She also suffers from mental illness, including major depression with psychotic features, bipolar disorder and dementia. Although appellant has been involved with numerous mental health agencies, she has a history of taking herself off of the medications prescribed to treat her mental illness, contrary to the advice of her doctor. Appellant also has an extensive criminal history, including convictions on charges of child endangering, numerous counts of disorderly conduct, possession of drug paraphernalia and theft.
 {¶ 3} Clayton and Elijah are appellant's seventh and eighth children, respectively. Appellant's four oldest children tragically died in a house fire. Her next two children were permanently placed with Hamilton County Children Services Board. Butler County Children Services Board ("BCCSB") first became involved with Clayton in 1996. He was found to be a dependent child and BCCSB was granted temporary custody in 1997. A day after Elijah's birth, a neglect and dependency complaint was filed on his behalf. In February 1999, temporary custody of both children was granted to appellant, and in September 1999 she was granted legal custody of both children. The next month, BCCSB received a referral stating that appellant was "strung out" on crack cocaine, had sold her furniture, and that the home was strewn with dirty diapers. Appellant herself also contacted BCCSB at this time to request assistance since she had no food or diapers in her home.
 {¶ 4} In July 2000, the children were placed in emergency foster care after appellant left them with a relative, giving no indication when she would return for them. She was reportedly high on crack cocaine at this time and allegedly stole money from the relative with whom she had left the children. BCCSB filed another neglect and dependency complaint, and Clayton and Elijah were adjudicated to be neglected and dependent children on November 27 2000. Temporary custody was continued with BCCSB which placed the children with a foster family. The boys continued to reside with the same foster family for the duration of this proceeding and both Clayton and Elijah have bonded well with their foster parents.
 {¶ 5} Appellant did not have any contact with the children for a period of several months. In January 2001, appellant contacted BCCSB to request visitation, but subsequently failed to make the necessary arrangements to exercise her visitation. By the summer of 2001, appellant had again entered the Sojourner residential treatment. She was now sixth months pregnant with her ninth child. In spite of her pregnancy, appellant continued to use both alcohol and cocaine while she was enrolled in the program. While appellant continued to request visitation with Clayton and Elijah, she failed to visit with them until September 13, 2001. By this time, more than ten months had elapsed since her last visit with them. After the September 13 visit, appellant's visits with the boys occurred on a more consistent basis.
 {¶ 6} During the pendency of this proceeding, appellant attempted to complete many case plan services. Among the services utilized were counseling with Catholic Social Services, Hamilton Counseling Center, Family Preservation Program, Children's Diagnostic Center and Sojourner Women's Recovery Services. All of the care providers contacted by BCCSB remarked on appellant's high risk of relapse. Bev Warner of Sojourner noted that appellant's potential for relapse was particularly high as she "continued to use [drugs and alcohol] despite medical, physical, family, legal, and financial consequences."
 {¶ 7} Based on appellant's failure to make progress on her case plan goals and the length of time that the children had been in foster care, BCCSB filed a motion requesting permanent custody of both Clayton and Elijah. A hearing on the motion was held on December 7, 2001, and the trial court issued a decision granting the motion on January 24, 2002. Appellant appeals, raising one assignment of error for our review:
 {¶ 8} "THE TRIAL COURT'S DECISION PLACING CUSTORY [SIC] WITH THE BCCSB IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
 {¶ 9} Natural parents have a constitutionally protected liberty interest in the care and custody of their children. See Santosky v.Kramer (1982), 455 U.S. 745, 102 S.Ct. 1388. A motion by the state for permanent custody seeks not merely to infringe upon that fundamental liberty interest, but to end it. Id. at 759, 102 S.Ct. at 1397. In order to satisfy due process, the state is required to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769, 102 S.Ct. at 1403. Clear and convincing evidence requires that the proof produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Rodgers (2000),138 Ohio App.3d 510, 519, quoting Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 10} Before granting permanent custody of a child to the state, the trial court is required to make specific statutory findings. The reviewing court must determine whether the trial court followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. In re William S., 75 Ohio St.3d 95,1996-Ohio-182.
 {¶ 11} When a state agency moves for permanent custody, the trial court is required, in part, to determine "if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A)(1). In making this best interest determination, the trial court must consider all relevant factors, including but not limited to the following factors enumerated in R.C. 2151.414(D):
 {¶ 12} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 13} In her assignment of error, appellant specifically alleges that it is in the children's best interest that custody be returned to her, and that her parental rights not be terminated. In support of this contention, appellant notes that there is evidence that she and the children interact well, that she has behaved appropriately during visitation, that she is a candidate for Section 8 housing, that she completed the Sojourner treatment program, and that BCCSB would remain involved with her since BCCSB had temporary custody of her newborn son, Jeremiah. While we agree with appellant's recitation of the above facts, there is also evidence in the record which supports the trial court's conclusion that it is in the children's best interest that the state be granted permanent custody.
 {¶ 14} The trial court carefully considered each statutory factor and made relevant findings supported by the record. Both children had been in and out of foster care throughout their lives. See R.C.2151.414(D)(4). At the time of the final hearing, the children had been in foster care for more than sixteen months. See id. Appellant went more than ten months without seeing the children before resuming visits in September 2001. See R.C. 2151.414(D)(1). While appellant interacts appropriately with the children, her interaction is minimal, and the children do not exhibit a typical parent-child bond with her. See id. The trial court noted that although appellant completed drug and alcohol abuse treatment, she had done so many times before without any measurable degree of success. Her history of substance abuse dates back more than 20 years. See R.C. 2151.414(D)(4). Her drug and alcohol abuse relapses had caused the children to be placed in foster care on previous occasions. See R.C. 2151.414(D)(3). Appellant had pled guilty to child endangering and had her parental rights with regard to two older children terminated. See R.C. 2151.414(D)(5). Finally, the children's guardian ad litem strongly advocated that the permanent custody motion be granted. See R.C. 2151.414(D)(2).
 {¶ 15} Based on our review of the factors in R.C. 2151.414(D) and all relevant evidence in the record, we find that there was clear and convincing evidence before the trial court that it was in the children's best interest that BCCSB be granted permanent custody. We therefore conclude that the trial court did not err in granting BCCSB's motion for permanent custody. The assignment of error is overruled.
 {¶ 16} Judgment affirmed.
YOUNG and VALEN, JJ., concur.
[1] The identity of Clayton's father was not determined by the trial court. Elijah's father, Antonio Reed, did not participate in the permanent custody hearing in spite of having been properly served with notice of the proceeding. He is not a party to the present appeal.