OPINION
{¶ 1} Appellant, Janet Kilby, appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, to grant permanent custody of her daughter, Sarah Kilby, to the Butler County Children's Services Board ("BCCSB").
 {¶ 2} Sarah (dob 11/20/00) was removed from the custody of appellant when she was 72 hours old.[1] Sarah was adjudicated a dependent child on April 6, 2001 and temporary custody was continued with BCCSB. BCCSB filed a motion for permanent custody and an amended motion for permanent custody on October 8, 2001 and December 4, 2001, respectively.
 {¶ 3} A hearing on the permanent custody motion was held in July 2002. The trial court issued its decision, granting the motion and divesting appellant and the father of their parental rights on August 28, 2002. Appellant appeals, presenting the following assignment of error:
 {¶ 4} "The trial court's decision to grant BCCSB permanent custody is not supported by clear and convincing evidence[.]"
 {¶ 5} A motion by the state for permanent custody seeks not merely to infringe upon that fundamental liberty interest, but to end it.Santosky v. Kramer (1982), 455 U.S. 745, 759, 102 S.Ct. 1388. The state is required to prove by clear and convincing evidence that the statutory standards have been met. In re Rodgers (2000), 138 Ohio App.3d 510, 519. Clear and convincing evidence requires that the proof produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Id.
 {¶ 6} Before granting permanent custody of a child to the state, the trial court is required to make specific statutory findings. A reviewing court must determine whether the trial court followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. Id. at 520.
 {¶ 7} When a state agency moves for permanent custody, the trial court is required, in part, to determine "if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A)(1). In making this best interest determination, the trial court must consider all relevant factors, including but not limited to the following factors enumerated in R.C. 2151.414(D):
 {¶ 8} "The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 9} "The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 10} "The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 11} "The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 12} "Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 13} In her assignment of error, appellant specifically alleges that it is in Sarah's best interest that custody be returned to her, and that her parental rights not be terminated.
 {¶ 14} Upon examination of the record, we find that the trial court's determination that it is in the best interest of Sarah to be permanently placed in the custody of BCCSB is supported by clear and convincing evidence.
 {¶ 15} The trial court outlined the required factors and applied the evidence in its consideration of the motion for permanent custody.
 {¶ 16} The trial court noted that the father's last visit with Sarah was October 17, 2001, some nine months before the July 2002 permanent custody hearing. Appellant had not visited with Sarah since November 17, 2001. Appellant contacted BCCSB in March 2002 for a visit with Sarah, but appeared at BCCSB with a physician's note that reportedly indicated that appellant had head lice. No visit took place at that time and appellant made no further attempts to visit with the child.
 {¶ 17} Based upon the lack of visitation, the trial court found, under R.C. 2151.414(E)(10), that the parents had abandoned Sarah.
 {¶ 18} Additional evidence presented to the trial court included appellant's certified entry of conviction for complicity to gross sexual imposition and child endangering from 1995. The convictions were based upon alleged sexual contact with the 20-day-old infant niece of appellant.
 {¶ 19} Despite appellant's criminal convictions, she had not participated in sexual offender counseling as ordered by the trial court. Appellant refused to admit to or acknowledge the sexual offender allegations or behavior, and therefore, was deemed not appropriate for sexual offender counseling.
 {¶ 20} Testimony was presented to the trial court that appellant referred to Sarah during visits as "sexy girl," and that appellant stated that Sarah had sexy dimples on her cheeks. Jim Sarris, sex-offender counselor with Catholic Social Services, testified that appellant's statements raised concerns because they suggested an attitude that supports the sexualization of children.
 {¶ 21} The trial court also considered as a pertinent factor the evidence that appellant's parental rights to Sarah's sibling were involuntarily terminated in 1998. R.C. 2151.414(E)(11).
 {¶ 22} Dr. Charles Lee, a psychologist with the Children's Diagnostic Center, conducted psychological evaluations of appellant in 1996 and 2001. He testified that appellant tested in the mildly mentally retarded range and would have difficulty learning and retaining new information. Dr. Lee testified that appellant needed various services to enable her to parent Sarah and the prognosis that appellant would be able to parent Sarah was "very guarded."
 {¶ 23} Dr. Lee indicated in his earlier evaluation of appellant that appellant could not parent appropriately, consistently, or independently. Dr. Lee opined that those concerns were not alleviated when he evaluated appellant again in 2001.
 {¶ 24} Evidence was presented that appellant failed to utilize the services provided by Mental Retardation and Developmental Disabilities ("MRDD"). Appellant also did not successfully participate in services with the Development of Living Skills ("DLS"), a home-based program.
 {¶ 25} The trial court found that Sarah has special needs that would present challenges to her caregivers. Specifically, Sarah has speech problems, some gross motor deficiencies, and is currently using knee braces.
 {¶ 26} The trial court noted that Sarah has been in the temporary custody of BCCSB for more than 12 consecutive months of a consecutive 22-month period. Sarah is reportedly very bonded to her foster family, with whom she has remained since her placement at the age of three days. The foster parents have expressed an interest in adopting Sarah. The child's guardian ad litem ("GAL") recommended a grant of permanent custody to BCCSB.
 {¶ 27} The trial court properly found by clear and convincing evidence that it was in the best interest of Sarah to grant permanent custody to BCCSB and to terminate appellant's parental rights. We find no error by the trial court. Accordingly, appellant's assignment of error is overruled.
Judgment affirmed.
YOUNG and WALSH, JJ., concur.
[1] The child's father, John Kilby, did not appear for the permanent custody hearing and has not appealed the judgment of the trial court.