[Cite as *In re M.J.P.L.*, 2013-Ohio-3406.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

IN THE MATTER OF:                          :

    M.J.P.L.                              :           CASE NO.   CA2013-03-008

                                          :           O P I N I O N
                                                              8/5/2013
                                          :

                                          :

                                          :

APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 20113143

Linda Cebula, 71 Silvercreek Drive, Wilmington, Ohio 45177, guardian ad litem

Holly Simpson, 6284 Taylor Pike, Blanchester, Ohio 45107, for appellant, R.L.

Susan Zurface Daniels, P.O. Box 589, Hillsboro, Ohio 45133, for W.L.

Richard W. Moyer, Clinton County Prosecuting Attorney, William C. Randolph, 103 East Main Street, Wilmington, Ohio 45177, for appellee, Clinton County Department of Job and Family Services

**HENDRICKSON, P.J.**

{¶ 1}   Appellant, the biological mother of M.J.P.L., appeals a decision of the Clinton

County Court of Common Pleas, Juvenile Division, granting permanent custody of the child to

a children services agency.

{¶ 2}   M.J.P.L. was born on November 21, 2011.  A week after the child's birth, Clinton County Children Services filed a complaint alleging M.J.P.L. was dependent.  The complaint alleged that the agency had prior involvement with the mother, as the mother's three older children had previously been removed from her home and placed in the temporary custody of the agency.  The complaint alleged that at the time of M.J.P.L.'s birth, the parents were living with a person who had a pending court case involving allegations of drug abuse in the presence of children.  After the agency filed the dependency complaint, the parents left the county with M.J.P.L. and were living in a Pike County homeless shelter.

{¶ 3}   After a hearing on December 21, 2011, the court found that the family had a history with the agency, there were multiple concerns with the parents' lack of care for M.J.P.L., the parents resided with the child in the home of a known drug abuser, and the parents removed the child from the jurisdiction of the court without notice to children services as they were obligated to do.  Based on these findings, the court placed the child in the temporary custody of the agency.

{¶ 4}   M.J.P.L. was adjudicated dependent on March 1, 2012, and a case plan was prepared for the parents with reunification as the goal.  Reunification was unsuccessful, as the parents failed to visit the child, did not engage in case plan services, and failed to obtain stable housing or employment.  On June 6, 2012, the mother was imprisoned in Dayton Correctional Institute with a scheduled release date of March 23, 2013.  The agency filed for permanent custody of M.J.P.L. on August 28, 2012.

{¶ 5}   The trial court held a hearing on the permanent custody motion on February 14, 2013 and issued a decision granting permanent custody to the agency on February 22, 2013.  Appellant now appeals the court's decision and raises one assignment of error for our review:

{¶ 6}   THE TRIAL COURT ERRED IN FINDING THAT A LEGALLY SECURE

PLACEMENT COULD NOT BE ACHIEVED WITHOUT A GRANT OF PERMANENT CUSTODY TO CCCS.

{¶ 7} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re Starkey*, 150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16 (7th Dist.). A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *In re Rodgers* (2000), 138 Ohio App.3d 510, 520 (12th Dist.).

{¶ 8} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). Second, the court must find that any of the following apply: the child is abandoned; the child is orphaned; the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; or where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1)(a), (b), (c) and (d); *In re E.B.*, 12th Dist. Warren Nos. CA2009-10-139, CA2009-11-146, 2010-Ohio-1122, ¶ 22.

{¶ 9} The juvenile court found by clear and convincing evidence that M.J.P.L. was abandoned by her father and mother, the child could not be placed with either parent within a

reasonable time,[1] and that granting permanent custody was in the child's best interest. As discussed above, appellant's sole assignment of error on appeal challenges the court's finding that the child is in need of a legally secure placement that could not be achieved without a grant of permanent custody to the agency. This finding is one of the factors the court must consider in determining whether permanent custody is in the best interest of a child.

{¶ 10} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 11} At the hearing, the agency caseworker testified that at the time of the complaint in this case, the agency had previous involvement with the family and had custody of

---

1. We note that while the court found both that the child was abandoned and that she could not be placed with either parent within a reasonable time, only one of these findings was required under the statute. *In re J.M.*, 12th Dist. Fayette No. CA2012-05-015, 2012-Ohio-4766, ¶ 28.

M.J.P.L.'s brother. She indicated the agency filed the complaint in the case because of the prior involvement, the lack of stable housing, and because the agency had received several complaints in regard to the care the parents were providing for the child. According to the caseworker, shortly after M.J.P.L. was removed from the home, visitation was set up for the parents to visit the child for two hours twice a week. The father attended visitations five times, and the mother attended one visitation. The caseworker testified that the mother was arrested early in the case, but was back in the area around January 2012, but did not visit. The caseworker indicated the mother was incarcerated in the Dayton Correctional Institution in June 2012 and was scheduled to be released March 23, 2013. She testified that the father moved to Chillicothe with a girlfriend in July 2012. During the time M.J.P.L. has been in the temporary custody of the agency, neither parent has sent presents, letters or cards for holidays or birthdays.

{¶ 12} The caseworker also testified that a case plan for the mother required her to complete a mental health assessment and to follow the recommendations, to complete parenting classes, to obtain stable housing and to visit the child. None of the elements of the case plan were completed. The caseworker testified that the father contacted the agency in February 2013 and indicated he was in agreement with a grant of permanent custody to the agency. The caseworker also stated that the child has a brother who was placed in the permanent custody of the agency. The caseworker explained that the child is bonded to the foster parents, who treat her like their own child.

{¶ 13} Appellant also testified at the hearing and indicated that she was arrested in December 2011 and was ultimately sent to prison in May 2012. She indicated she had an underlying charge of breaking and entering at Wilmington College and was put on probation, but was arrested and eventually sent to prison when she was discovered on college property again. The guardian ad litem prepared a report which was submitted to the court and

recommended that M.J.P.L. be placed in the permanent custody of the agency.

{¶ 14} Appellant testified that upon her release from prison, she planned to stay in a homeless shelter in Dayton for a short time, then work with Metro Housing Authority in Dayton to obtain an efficiency apartment. She indicated she had a job lined up with a hospital in the housekeeping department and that she would apply for public assistance. She testified that she completed the mental health assessment required by the case plan, but due to her incarceration, could not complete the case plan requirements. She indicated that she has engaged in classes while in prison, sees a counselor regularly and is on medication.

{¶ 15} In its consideration of the best interest factors, the court found appellant visited M.J.P.L. only one time since the child was placed in agency custody. The court found while the mother completed the mental health assessment, she did not undergo the recommended treatment. The court further found that the mother did not attend parenting classes and there was testimony regarding the parents' various unstable residences, including a homeless shelter. The court indicated that the mother testified about her efforts to complete the case plan on her release from custody. The court determined that the child is in need of a legally secure placement and such placement cannot be assured without a grant of permanent custody to the agency.

{¶ 16} On appeal, appellant argues the court erred in this determination because since her incarceration, she has taken advantage of all the programs available to her in prison. She argues she has stable housing set up through a mental health coordinator that is contingent on receiving mental health treatment and she has obtained a job upon release. She argues that while in prison, she completed alcohol and drug counseling, learned computer skills and took a class on sex offenders. Appellant argues that this evidence demonstrates her ability to provide a legally secure placement for the child.

{¶ 17} We find no merit to appellant's argument. M.J.P.L.'s father indicated that he

agreed that permanent custody was in the child's best interest and there were no appropriate relatives capable of caring for the child as an alternative to permanent custody. Although at the time of the hearing, appellant discussed her plan for developing stability in the areas of employment and housing, appellant was unable to show a commitment to her children and provide stability for her other children in the past. In fact, in this case appellant failed to show a basic commitment to M.J.P.L. by visiting the child during the time she was not incarcerated.

{¶ 18} In addition, the record indicates appellant was unable to remedy the problems that led to the removal of her older children. The agency was familiar with the family based on interaction involving appellant's other children, one of whom had already been placed in the permanent custody of the agency, and another currently in the temporary custody of children services. As we have noted before, while parents certainly can change behavior, a parent's past history is often one of the best predictors of future behavior. *In re A.S.*, 12th Dist. Butler Nos. CA2004-07-182, CA2004-08-185, 2004-Ohio- 6323, ¶ 37. Given the lack of any progress on the case plan, appellant's failure to visit the child and her past history of failing to remedy problems, we find no error in the trial court's determination that M.J.P.L. is in need of a legally secure placement which cannot be achieved without a grant of permanent custody to the agency.

{¶ 19} Moreover, this factor is just one of the enumerated factors a court must consider in determining the best interest of the child. R.C. 2151.414(D)(1). The court considered these other factors along with the need for a legally secure placement, and found the factors together weigh in favor of finding permanent custody in M.J.P.L.'s interest. In particular, the court found that the child has been in foster care since she was one month old and because the parents did not attend visitations, the child does not have any type of relationship with either of her parents.

{¶ 20} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.