[Cite as *In re R.E.*, 2014-Ohio-2338.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| R.E. | : | CASE NO.  CA2013-12-245 |
| | : | O P I N I O N<br>6/2/2014 |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2011-0537

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Fl., Hamilton, Ohio 45011, for appellee, Butler County Children Services

Scott N. Blauvelt, Baden & Jones Bldg., 246 High Street, Hamilton, Ohio 45011, for appellant, T.E., Jr.

Steven Sharpe, 10 Journal Square, 3rd Floor, Hamilton, Ohio 45011, guardian ad litem

**HENDRICKSON, P.J.**

{¶ 1}  Appellant, the biological father of R.E., appeals a decision of the Butler County Juvenile Court granting permanent custody of the child to a children services agency.

{¶ 2}  The Butler County Department of Job and Family Services, Children Services Division, received a referral regarding R.E. on December 16, 2011, the day the child was

born. The referral indicated that the mother was admitted to the hospital near the end of her pregnancy due to suicidal behavior. The mother reportedly tried to abort the baby by cutting it out and by hitting herself in the abdomen. The mother was admitted to the hospital with a seven-inch superficial cut on her abdomen and was kept in the behavioral unit of the hospital until after the child was born. Both parents were reported to have intellectual delays and there was concern regarding the parents' ability to care for the child.

{¶ 3} The agency filed a complaint alleging the child was dependent. R.E. was placed in the temporary custody of the agency on her release from the hospital three days following her birth. At a hearing, the parents stipulated to the dependency finding and temporary custody with the agency was continued. A case plan was prepared and adopted by the court, but the parents made little progress and the agency filed for permanent custody of R.E. on March 8, 2013.

{¶ 4} An agency intake worker testified and discussed the agency's initial contact with the family and the parents' lack of progress on the case plan. The caseworker testified that the mother took some steps initially towards completing the case plan requirements, but during the course of the case quit participating in services and quit visiting the child. The mother last visited with R.E. in November 2012. The mother failed to appear at the permanent custody hearing and was found in default.

{¶ 5} The caseworker testified that the father was required to complete a psychological evaluation and a batterer's assessment and to follow all recommendations. The caseworker stated that these requirements were based on early meetings with the parents when the mother accused the father of raping her and the mother indicated she was afraid of the father. The psychological examination requirement was based on concerns with the father's maturity level. These concerns arose from the father's responses to agency questions regarding parenting and an observed overdependence by the father on his mother.

- 2 -

The father completed the evaluation and the recommendations were for the father to undergo individual counseling and complete a batterer's intervention program. The father failed to complete individual counseling and refused to complete the batterer's program.

{¶ 6} The case plan also required the father to complete his G.E.D. and to obtain employment. The father only began to work on his G.E.D. requirements a few weeks before the hearing, and he failed to obtain employment. In addition, the case plan required the father to obtain safe and stable housing. The caseworker testified that the father lives with his mother, who has an extensive history with children services. The grandmother's children, including R.E.'s father, were removed from the grandmother's home as juveniles. Because of this extensive history with children services, the home would not be approved by the agency as a placement for the child. The caseworker further indicated there are concerns with the father's dependence on his mother. She testified that generally, the grandmother speaks for the father and if there is a problem, the grandmother tells the father what to say. The caseworker indicated that when she phoned the father, she could hear the grandmother in the background, telling the father what to say, and that at a semi-annual review meeting, the agency had to tell the grandmother to be quiet because the meeting was for the father and he needed to speak for himself.

{¶ 7} The father testified at the hearing that he is 25 years old, lives with his mother and does not have any source of income. His last job was at the age of 19. He indicated that if he had custody of R.E., his mother would pay for diapers and necessities. He testified that he did not complete the batterer's program because he is not a violent person, and instead, he is the victim in his relationship with R.E.'s mother. However, he admitted that he had violent outbursts when he was a juvenile and in foster care, stabbed someone with a pencil when he was in juvenile detention, and punched his foster parents in the face.

{¶ 8} The paternal grandmother testified at the hearing and discussed her own

history with children services. She indicated that her own children were in and out of foster care and permanent custody was granted to the agency of one child and another quit seeing her. She stated that R.E.'s father had problems in foster care and was very violent in juvenile detention. Another son who currently lives with the grandmother is a sex offender. The grandmother testified that she served time in jail and 13 months in prison. She has asthma, diabetes, partial blindness and back problems. The grandmother indicated that the father's problem with getting a job is that he does not have his G.E.D. and that R.E. could live with her until the father could get his own place. She indicated that if the father got a job, she would watch R.E. while he was at work.

{¶ 9} R.E.'s foster parent testified the child has been in their home since she was three days old. The family has three adopted children in the home. The foster parent reported that R.E. is doing well in the home and has met all her developmental milestones and interacts well with other children. R.E. is bonded with the foster mother, father, and calls them "mommy" and "daddy." In addition, she is bonded to the other children and extended family.

{¶ 10} Several exhibits were admitted into evidence at the hearing, including the agency's social summaries, home study reports on three individuals, both parents' psychological evaluations, and status reports from the provider of the batterer's intervention group. In addition, the guardian ad litem prepared a report and recommended that permanent custody of R.E. be granted to the agency.

{¶ 11} A magistrate granted the motion for permanent custody, and the trial court overruled objections and adopted the magistrate's decision on December 17, 2013. Appellant now appeals the trial court's decision to grant permanent custody of R.E. to the agency and raises the following assignment of error for our review:

{¶ 12} THE TRIAL COURT'S DECISION AND ORDER GRANTING PERMANENT

CUSTODY OF R.E. TO THE BUTLER COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} Before a natural parent's constitutionally protected liberty interest in the care and custody of his child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re Starkey*, 150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16 (7th Dist.). A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *In re Rodgers*, 138 Ohio App.3d 510, 520 (12th Dist.2000).

{¶ 14} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). Second, the court must find that any of the following apply: the child is abandoned; the child is orphaned; the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; or where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1)(a), (b), (c) and (d); *In re E.B.*, 12th Dist. Warren Nos. CA2009-10-139, CA2009-11-146, 2010-Ohio-1122, ¶ 22.

{¶ 15} The juvenile court found by clear and convincing evidence, and appellant does not dispute, that R.E. has been in the temporary custody of the agency for more than 12

months of a consecutive 22-month period as of the date the agency filed the permanent custody motion. However, appellant does dispute the juvenile court's finding that granting permanent custody of the children to the agency is in the child's best interest.

{¶ 16} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 17} With respect to R.C. 2151.414 (D)(1)(a), the juvenile court found that R.E. was placed in foster care at the age of three days and has never lived with her mother or father. The court also found that the child has not seen her mother since November 2012. The father visited R.E. regularly two times a week for two hours each visit and is appropriate during visits. The court further found that R.E., who was 18 months old, has been placed in the same foster home since she was three days old and is bonded with all of the members of the foster family and their extended family. The court found that all of the child's needs are being met and that the foster family would like to adopt her.

{¶ 18} In its consideration of R.C. 2151.414(D)(1)(b), the juvenile court indicated that it did not conduct an in camera review, but that the guardian ad litem recommended that the court grant permanent custody to the agency.

{¶ 19} With respect to R.C. 2151.414(D)(1)(c), the juvenile court found that R.E. was placed in agency custody on December 19, 2011, at three days old and has remained in agency custody. The court concluded that the child has therefore been in agency custody for 12 months of a 22-month period as defined by statute.

{¶ 20} With respect to R.C. 2151.414(D)(1)(d), the juvenile court found that the testimony of witnesses, exhibits at trial, the child's custodial history and the prior entries in the case make it clear that the child is in need of a legally secure placement. The court indicated that the mother failed to complete the case plan and failed to maintain contact with the child. In regard to the father, the court reviewed the details of the father's failure to complete the case plan, including mental health counseling and the batterer's intervention program. The court also noted that the father failed to take any steps toward getting his G.E.D until May 2013 and that he is not employed, does not have a source of income, and lives with his mother. The court also found that an uncle who is a sex offender also lives in the grandmother's home and all three individuals are supported by the grandmother's monthly disability check.

{¶ 21} The trial court also reviewed the home studies that were performed on a paternal aunt, the maternal grandmother, and a family friend. The trial court discussed the reasons these home studies were denied, and further indicated that no motions for custody were filed by anyone seeking custody of the child.

{¶ 22} Based on consideration of these factors, the court found by clear and convincing evidence that it was in R.E.'s best interest to grant permanent custody to the

agency. The court concluded that even though the parents completed a parenting program, the concerns which led to the agency filing the complaint in this case have not been substantially remedied. The court found that the mother has not addressed her mental health issues and the father has not addressed either his mental health or domestic violence issues and the ability of either parent to appropriately parent the child remains a serious concern.

{¶ 23} On appeal, the father argues the court's decision was not supported by the manifest weight of the evidence. Specifically, the father disagrees with the trial court's conclusions that the agency adopted appropriate case plan services and that the concerns that led to the filing of the complaint were not substantially remedied.

{¶ 24} First, the father argues that several case plan services were not appropriate. He argues the need for him to participate in a domestic violence assessment and follow recommendations was not clear. However, the evidence shows that at the hospital, the mother made accusations that the father raped her and she was afraid of him. In addition, evidence was presented to show that the father behaved violently in the past as a juvenile, and the father admitted to several instances of violent behavior. The paternal grandmother also testified that the father had been violent as a juvenile. The father completed two assessments and both recommended that he complete the batterer's intervention group. Accordingly, we find more than sufficient evidence to support the appropriateness of the case plan requirement that the father complete a batterer's intervention program.

{¶ 25} The father also disagrees with the requirement that he receive individual counseling through the same provider who recommended that he needed domestic violence classes. He contends that the record shows they did not get along and a communication problem existed, so counseling with this provider was not appropriate. However, the father

testified that he was permitted to find other counselors and seek a second opinion, but he did not do so.

{¶ 26} The father also disagrees with the court's conclusion that the parents failed to substantially remedy the conditions that led to the child's removal. He argues that he successfully completed parenting classes and completed the psychological assessment. He admits he did not complete individual counseling and domestic violence classes, but argues the agency should have found a different provider and the domestic violence classes were not needed. He also admits he did not obtain his G.E.D., secure employment or obtain independent housing, but contends he made substantial steps toward these goals. The father also argues that the court erred in considering R.C. 2151.414(D)(1)(a) because the record shows that he is qualified and prepared to assume custody of the child. He argues his interaction was appropriate, and although his financial circumstances were not as he hoped he was working towards changing his situation and he expressed his love and desire to have R.E. in his custody.

{¶ 27} However, the record does not support the father's argument that he made "substantial steps" toward reunification. Although the father completed a parenting class as required by the case plan and visited R.E. regularly, he did little else to remedy his circumstances in the 18 months following the child's removal.

{¶ 28} The father failed to obtain his G.E.D., and only began working on it a few weeks before the hearing. At the time of the hearing, he was unemployed, living with his mother and was dependent on her for all of his needs. In addition, he failed to complete individual counseling or the batterer's intervention program. The father is not in a position to take custody of R.E., nor does it appear from the record that he will be in a position to do so in the near future.

{¶ 29} After careful review of the evidence in this case, we find the court's decision

was not against the manifest weight of the evidence. Accordingly, we find no error in the trial court's decision to grant permanent custody of R.E. to the agency.

{¶ 30} Judgment affirmed.

S. POWELL and M. POWELL, JJ., concur.